[No. 9244-5-III. Division Three. March 27, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY O. ESSEX, *Appellant*.

---

*Ernest T. Reynolds,* for appellant.

*Gerald Matosich, Prosecuting Attorney,* for respondent.

SHIELDS, J.—Jerry Essex was convicted by a jury in Klickitat County as an accomplice to each of the following: two counts unlawful hunting without a bear stamp, one count unlawful hunting without a hound stamp and one count unlawful hunting without a hunting license. He appeals the convictions; we reverse one of the counts of unlawful hunting without a bear stamp[1] but affirm the other three counts.

In April 1985, Joseph R. Sandberg, an agent with the United States Fish and Wildlife Service, began a covert investigation of hunting violations in southeastern Washington. Using an assumed identity, he made arrangements with Jerry Branton for a guided bear hunt with Mr. Branton and his partner, Mr. Essex. Mr. Sandberg and Special Agent Scott Pearson, another undercover employee of the United States Fish and Wildlife Service, agreed to pay $600 each for the hunt, which included the purchase by the guides of resident bear tags, licenses and hound stamps for both agents.

---

[1] We reverse the second count of unlawful hunting without a bear stamp sua sponte, because the record does not contain an information charging that crime, there was no instruction with respect to that count and the prosecutor has informally acknowledged the judgment is erroneous.

On August 22, the agents met their guides at the Illahee Motel in Stevenson and then proceeded to hunt in Skamania County. During the hunt, Mr. Essex provided and supervised the use of dogs which were equipped with electronic collars. After Mr. Pearson killed a bear, a bear tag in the name of Mr. Branton's wife was sold to Mr. Pearson for an additional $40 and then applied to the carcass. Neither Mr. Sandberg nor Mr. Pearson was provided with his own hunting license, bear tag or hound stamp. It is undisputed Mr. Essex had a hunting license and hound stamp.

Mr. Sandberg did not kill a bear so the guides offered a second opportunity to hunt in Klickitat County on September 14 and 15. The record also indicates Mr. Sandberg had promised to send additional clients to the defendants' guide service which was then in its infancy stage. Mr. Sandberg returned to Stevenson on September 13, accompanied by undercover Washington State Game Agent Barry Dreher. The two men were joined by four guides: Mr. Essex, Mr. Branton, Jerry McGraw and Richard Beard. Mr. Sandberg was not provided a hunting license, bear tag or hound stamp; Mr. Dreher had a resident license and bear tag but no hound stamp.

The party drove to the Oaks in Klickitat County, not far from White Salmon. On the first day, Mr. Essex and the dogs treed a bear which was then shot by Mr. Dreher. That evening, Mr. Sandberg told all of the guides he did not have a license to hunt or a bear tag. The next day Mr. Sandberg asked Mr. Branton if he had a bear tag for him to use. Mr. Branton located one in the glove box of his car and gave it to Mr. Sandberg, telling him that his new name was Don Mosier. The party treed a bear near Rattlesnake in Klickitat County and Mr. Sandberg shot and tagged it.

That evening, the guides and agents met to discuss future hunts. During the discussion, Mr. Essex said he was aware Mr. Sandberg did not have a license and that licenses and/or tags would be provided for any future hunts. Mr. Essex was charged and convicted on all counts as an

accomplice to Mr. Sandberg for the activities in Klickitat County.[2]

Mr. Essex first contends the court erred in refusing to grant his motion for a mistrial based upon the admission of testimony related to the illegal sale of bear gallbladders.[3] He argues he was not charged with that crime and the prejudicial testimony was not cured by the court's instruction. Preliminarily, it is important to note that Mr. Essex was tried with codefendants Jerry McGraw and Richard Beard. Included among charges against Mr. McGraw was the illegal sale of bear gallbladders.

■■ Review of a denial of a motion for mistrial is governed under the abuse of discretion standard. *State v. Mak,* 105 Wn.2d 692, 701, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986). The test is not whether the remark was deliberate or inadvertent but whether the defendant was denied a fair trial. *State v. Weber,* 99 Wn.2d 158, 165, 659 P.2d 1102 (1983) (citing *State v. Gilcrist,* 91 Wn.2d 603, 612, 590 P.2d 809 (1979)).

In determining whether a trial irregularity prejudiced the jury so as to deny the defendant his right to a fair trial, we will consider: (1) the seriousness of the irregularity; (2) whether the

---

[2]Mr. Essex was found guilty in Skamania County of selling bear gallbladders, hunting bear without a nonresident bear tag and criminal conspiracy to hunt without licenses, tags or hound stamps. This court was advised at oral argument that that conviction is on appeal to Division Two of the Court of Appeals.

[3]*See* RCW 77.16.040 which provides in part:

"Except as authorized by law or rule, it is unlawful to . . . offer for sale, sell, possess, exchange, buy, transport, or ship wildlife or articles made from an endangered species."

*See also* WAC 232–12–071 which provides in part:

"It is unlawful to offer for sale, sell, purchase or trade . . . the gall bladder, claws and teeth of bear . . .".

The record discloses:

Q. [Mr. Shamek for the State] Did you subsequently ask him [McGraw] about getting money from bear parts you purchased?

A. [Mr. Sandberg] Uh, yes. On September 16th, we, we bought some bear galls, five, from Jerry Essex. Uh, and on two occasions, on November 16th in front of Barry Dreher, we asked Jerry McGraw if he had received his percentage of those five gall sales which occurred on the 16th. . . . He said yes, he had.

statement at issue was cumulative evidence; (3) whether the jurors were properly instructed to disregard the remarks of counsel not supported by the evidence; and (4) whether the prejudice was so grievous that nothing short of a new trial could remedy the error.

(Footnote omitted.) *Mak,* at 701 (citing *Weber,* at 165–66).

Here, Mr. Essex confines his argument to the single statement regarding his role in the illegal sale of bear gallbladders. The State asked the question on rebuttal in relation to the charges against Mr. McGraw; Mr. Sandberg inadvertently referred to Mr. Essex. After considering and denying the motion for a mistrial, a written instruction was submitted to the jury to disregard all remarks related to Mr. Essex and his involvement in the sale.

The first item to be considered is the seriousness of the irregularity. The remark as it affected Mr. Essex was sufficiently serious in light of an order in limine which had excluded the admissibility of this evidence. Additionally, the substance of the remark concerned evidence of another crime which is expressly forbidden except in very limited circumstances and for limited purposes. *See State v. Wilburn,* 51 Wn. App. 827, 831–32, 755 P.2d 842 (1988); *State v. Escalona,* 49 Wn. App. 251, 255, 742 P.2d 190 (1987) (citing ER 609 and ER 404(b)). However, though the remark was the only reference to Mr. Essex's participation in the illegal sale of bear gallbladders, it was cumulative to other evidence properly admitted for the purpose of convicting Mr. McGraw of that crime. Additionally, the jury was given a written instruction to disregard the evidence as it pertained to Mr. Essex. The jury is presumed to follow the court's instructions. *Mak,* at 702. The error was not so grievous as to have denied Mr. Essex a fair trial.

Next, Mr. Essex contends the court erred in the admission of evidence regarding the August hunt in Skamania County, because the court did not make a proper balancing on the record of the prejudicial effect as compared to the probative value of the evidence, citing *State v. Smith,* 106 Wn.2d 772, 777, 725 P.2d 951 (1986). The court ruled the

State would be allowed to present this evidence to show a common scheme, a hunt–for–hire operation in which the defendants were not concerned about violations of law with respect to licenses.[4] Thus, there is a sufficient record to permit effective appellate review and *Smith,* with respect to establishing a sufficient record for review, is satisfied.

██ ER 404(b)[5] provides that evidence of other crimes or acts is not admissible to show that a person acted in conformity with his character, but is admissible for other purposes including proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Adopting and expanding the exceptions of motive, intent, absence of accident or mistake, common scheme or plan, or identity found in *State v. Goebel,* 36 Wn.2d 367, 369, 218 P.2d 300 (1950).) In determining admissibility of other crimes a trial court must (1) determine that the evidence is relevant to an issue; (2) determine that any prejudicial effect is outweighed by the probative value; and (3) properly limit the purpose for which the jury may consider the evidence. *Smith,* at 77;

---

[4]The court noted:

"These cases involve, if the State's position is to be sustained, involve a number of acts which are deemed to be all interrelated, which is, are common scheme and design, to illegally, to commit violations of game laws with respect to bear hunting and guiding people and aiding people to commit offenses against the game laws of the State of Washington.

". . . I think the jury has a right to know that, to the extent that it is, it is shown to be a part of a common scheme or design. There is a point beyond which—such as this instance where you're now bringing in matters against Mr. Essex that he's not even charged with . . ..

"The only purpose in that is—well, there are two purposes. Of course, one is to show this common scheme or design, but the overriding and the overpowering inference, I think, that the jury would draw is that he committed these kinds of offenses, which would lead them to have, have—perhaps exhibit some undue, unfair prejudice on Mr. Essex's cases."

[5]ER 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982); *State v. Watkins,* 53 Wn. App. 264, 270, 766 P.2d 484 (1989). The admission of such evidence is reviewed under the abuse of discretion standard. *Mak,* at 702–03. In doubtful cases, the scale should be tipped in favor of the defendant and exclusion of the evidence. *State v. Bennett,* 36 Wn. App. 176, 180, 672 P.2d 772 (1983).

Here, the trial court admitted the evidence to prove a common scheme or plan. Recent case law has limited this purpose to those prior crimes which evidence the same unique characteristics as the charged crime, commonly referred to as a signature crime. *Smith,* at 778; *State v. Jenkins,* 53 Wn. App. 228, 236, 766 P.2d 499, *review denied,* 112 Wn.2d 1016 (1989); *State v. York,* 50 Wn. App. 446, 455, 749 P.2d 683 (1987), *review denied,* 110 Wn.2d 1009 (1988). The trial court's ruling, however, can be upheld if the evidence was admissible for any purpose. *State v. Jackson,* 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

We conclude the evidence was relevant to prove Mr. Essex's knowledge that the agents were hunting without the proper licenses and tags. First, knowledge is a specific element of the accomplice liability charge. (See instruction 11–A[6] to which no error has been assigned.) Second, the State was required to produce probative evidence that Mr. Essex knew the agents were hunting without a license. This evidence shed considerable light on that question and its probative value outweighed the prejudicial effect. Finally, while the court is required to limit the use of the evidence

---

[6]Instruction 11–A reads:

"A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

"(1) solicits, commands, encourages, or requests another person to commit the crime; or

"(2) aids or agrees to aid another person in planning or committing the crime.

"The word 'aid' means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice."

by submission of a proper instruction, no such instruction was given to the jury nor proposed by Mr. Essex. Because errors under ER 404(b) are not of constitutional magnitude and because Mr. Essex has not raised this issue on appeal, we will not consider it now. *State v. Fitzgerald,* 39 Wn. App. 652, 662, 694 P.2d 1117 (1985) (citing *State v. Ferguson,* 100 Wn.2d 131, 138, 667 P.2d 68 (1983)). Thus, we affirm the court's evidentiary ruling, not on the basis of establishing a common plan or scheme, but to prove the element of knowledge. *See State v. Toennis,* 52 Wn. App. 176, 186, 758 P.2d 539, *review denied,* 111 Wn.2d 1026 (1988).

 Finally, Mr. Essex contends the court erred in refusing to grant his motion to dismiss the charge of accomplice to unlawful hunting without a hound stamp. He argues the statute, RCW 77.32.350, does not require anyone but the owner of the dog to purchase a hound stamp, which he had done.

RCW 77.32.350 states in pertinent part:

(1) A hound stamp is required to hunt wild animals, except rabbits and hares, with a dog. The fee for this stamp is ten dollars.

. . . .

(4) To be valid, stamps required under this section shall be permanently affixed to the licensee's appropriate hunting or fishing license.

This statute has not been interpreted by any Washington court. Thus, it is necessary to apply general principles of statutory construction. *Converse v. Lottery Comm'n,* 56 Wn. App. 431, 433, 783 P.2d 1116 (1989). Those principles are set out in *State v. Von Thiele,* 47 Wn. App. 558, 562, 736 P.2d 297, *review denied,* 108 Wn.2d 1029 (1987):

In construing a statute the court's primary objective is to ascertain and implement the intent of the Legislature, which requires the court initially to consider the language of the statute. If the statutory language is plain and unambiguous, the court's inquiry must end, for a statute's meaning must be derived from the wording of the statute itself. Moreover, all sections of an act must be construed as a whole.

(Citations omitted.) The unambiguous language of the statute requires that anyone who "hunts" with a dog must purchase a hound stamp. The statute defines "to hunt" as an effort to kill, injure, capture or harass a wild animal, including bear. RCW 77.08.010(7). In reconciling sections (1) and (4) of RCW 77.32.350 so that neither is rendered meaningless, the Legislature intended that hound stamps be affixed to the hunter's license. It has already been determined that Mr. Sandberg was hunting without a license; therefore, it was impossible for a hound stamp to have been affixed thereon. Further, it is undisputed the agents were hunting bear with the aid of dogs; therefore, they were required to purchase a hound stamp. It is the act of hunting with a dog, not ownership of the dog, which gives rise to culpability. There was no error in denying Mr. Essex's motion to dismiss.

The judgment is reversed with respect to one count of unlawful hunting without a bear stamp and affirmed as to the other three counts.

MUNSON, C.J., and THOMPSON, J., concur.