[No. 13976-6-II.   Division Two.   July 23, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES
RONALD HOWLAND, *Appellant.*

*Clifford G. Morey* and *Davies Pearson, P.C.*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Kyron Huigens, Deputy,* for respondent.

GREEN, J.[*] — James Howland was convicted by a jury of one count of aggravated first degree murder and one count of first degree felony murder. He appeals.

Mr. Howland challenges (1) the aggravated first degree murder conviction on several constitutional bases, (2) the first degree felony murder conviction on the basis of ineffective assistance of counsel, and (3) certain evidentiary rulings. We find no prejudicial error and affirm.

Sometime between midnight and 4 a.m. on August 2, 1989, 61-year-old Jim Forrester was stabbed to death in his downtown Tacoma apartment. Mr. Forrester lived alone but

---

[*]Judge Dale M. Green is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

was known for being a friend to the street persons, drug users and prostitutes who frequented his neighborhood. He often loaned them money and let his friends sleep in his apartment when they had no other place to go. On the night of his death, Mr. Forrester was discovered lying on his bed; the rear door to his apartment had been broken open; he had been stabbed a number of times in the head, neck and chest with an "Old Hickory" brand kitchen knife with a wooden handle that was found lying on his left thigh.

In the course of their investigation, the Tacoma police came into contact with April Short, a prostitute and drug user. April had been a friend of the victim and often slept in his apartment. Eventually she led the police to suspect James Howland. On the evening of August 2, Mr. Howland voluntarily permitted a search of his home and gave a statement to the police stating he had been in the downtown Tacoma area on the evening preceding the murder. The search of Mr. Howland's home did not, however, turn up any evidence.

On September 25, 1989, the police received court authorization to intercept conversations between Howland and Tom Tamberelli, a street person, who had become acquainted with Mr. Howland through April Short. In mid September Mr. Howland began to initiate discussions with Mr. Tamberelli about Mr. Forrester's death. Ultimately, Mr. Howland told Mr. Tamberelli that he had committed the murder and gave a number of details about the crime. After a third person told the police what Mr. Howland had said, Mr. Tamberelli agreed to wear a wire.

Mr. Howland's conversations with Mr. Tamberelli were taped on September 26 and 27. Mr. Howland confided to Mr. Tamberelli that he had killed Forrester because he was angry with April and that he got back at her by "tak[ing] the roof from over April's head" and putting her back on the street.[1]

---

[1] Over defense objection at trial, the tape of this conversation was played to the jury.

On September 27, the police, based on a search warrant, confiscated several wooden handled knives, two of which were "Old Hickory" brand, from Mr. Howland's home. They also discovered some articles of clothing that appeared to be bloodstained.

On that same day, Mr. Howland was arrested for the murder of Jim Forrester. He waived his rights at the police station and went on to discuss the crime in great detail, nearly always speaking in the subjunctive or using the third person. For example, Mr. Howland remarked that someone who wanted to punish or warn April Short would have a reasonable motive for killing Forrester. He did, however, make some actual admissions to the detective who took his statement. When asked whether the murder could have been the result of a burglary that got out of hand, Mr. Howland replied, "I didn't have to kill him, I could have just walked away." In addition, when commenting on a pocket knife that fell out of his clothing, he first said, "that's not the knife I stabbed him with", but quickly changed his statement to "I never stabbed anybody with that knife." Mr. Howland was charged with first degree murder with the aggravating circumstance of burglary in the second degree (RCW 10.95.020) and first degree felony murder (RCW 9A-.32.030(1)(c)) and the case proceeded to trial.

Mr. Howland testified on his own behalf and told the jury he felt the need to protect April Short and to do so he gave her a knife from a set of kitchen knives he had in his home. He suggested that April left the knife in the victim's apartment and that an intruder broke in and used the knife to kill Mr. Forrester. As to his "confessions" to the police, Mr. Howland pointed out that he always spoke in the third person and never admitted to killing Forrester. He attempted to explain the content of his taped conversations with Mr. Tamberelli by stating he had been trying to impress Mr. Tamberelli and hoped to win his attention by claiming responsibility for Forrester's murder. The jury found him guilty of both first degree felony murder (RCW

9A.32.030) and first degree murder with the aggravating circumstance of second degree burglary (RCW 10.95.020).

After the verdict was returned, Howland moved for a mistrial, arguing that the jury had reached an inconsistent verdict when it found him guilty of both first degree felony murder and aggravated first degree murder. This motion was denied, the trial court reasoning that since the jury had convicted him of the more serious charge of aggravated murder, the conviction for felony murder could be merged with it for sentencing purposes. Mr. Howland was sentenced to life in prison without the possibility of parole or release on the aggravated murder charge; the trial court specifically noted that the sentence for the felony murder conviction merged with the sentence for the aggravated murder charge.

## Violation of Equal Protection

Mr. Howland first brings an equal protection challenge to the State's decision to charge him with first degree murder with the aggravating circumstance of second degree burglary, RCW 10.95.020(9)(c), rather than charging him separately with the less serious felonies of first degree murder and second degree burglary. This challenge must fail.

██ To provide for greater punishment when particular acts occur in sequence with another crime than when these acts occur in isolation is not a denial of equal protection. *State v. Sherman*, 98 Wn.2d 53, 61, 653 P.2d 612 (1982). That is what occurred here. The State in the proper exercise of its discretion charged Mr. Howland with first degree murder and then invoked the legislatively created penalty enhancement by charging that the murder occurred in sequence with a burglary. When, as here, the selective enforcement of a criminal statute is not arbitrary, capricious or based on unjustifiable standards, equal protection is not denied. *State v. Workman*, 90 Wn.2d 443, 456, 584 P.2d 382 (1978).

## Independent Felonious Purpose

Mr. Howland ventures a second challenge to the charge of first degree murder with aggravating circumstances arguing that the State has failed to prove he had a separate intent to

commit the aggravating circumstance of second degree burglary. Mr. Howland urges this court to adopt a California rule requiring proof in a capital case of an "independent felonious purpose" for both the underlying murder and the crime charged as an aggravating circumstance. *See People v. Green*, 27 Cal. 3d 1, 61, 609 P.2d 468, 505, 164 Cal. Rptr. 1 (1980) (under California law to avoid arbitrary and capricious application of the death penalty, the State must prove in a capital case that the defendant had an intent to murder and a separate intent to commit the aggravating felony; it is not enough for the State to show that "in the course of committing a first degree murder the defendant happens to engage in ancillary conduct that technically constitutes robbery or one of the other listed felonies . . .."). Essentially, the California court in *Green* held that, absent proof of an independent felonious purpose with respect to the crime charged as the aggravating circumstance, the aggravating circumstance merges with the murder charge. If this analysis is applied, Mr. Howland maintains, we must find that since there was no proof of an independent felonious intent to commit a burglary, that charge merged with the charge of murder. Consequently, he argues, the trial court erred when it denied his motion to dismiss the aggravating factor of burglary. Although this logic has superficial appeal, we decline to apply it here for several reasons.

First, *Green* is factually different. In that case, the defendant killed his wife and then, "to facilitate or conceal the primary crime", he took his wife's jewelry and her money and therefore committed a robbery which was "merely incidental to the murder". *Green*, at 61.

Here, however, the burglary, the act of breaking into Mr. Forrester's apartment to commit the murder, was not conduct merely ancillary or incidental to the murder. It was a necessary precursor to the murder. Once Howland formed his intent to carry out the killing inside Forrester's apartment and, in order to do so, broke down the door and entered without the victim's permission, he formed an independent

felonious intent to commit a burglary. *See* RCW 9A.52.030 (elements of second degree burglary).

Secondly, California law differs markedly from the law in Washington. For example, in California the "merger" doctrine is applied to prohibit a jury instruction on felony murder when the underlying felony is an integral part of the homicide. *People v. Ireland*, 70 Cal. 2d 522, 539, 450 P.2d 580, 75 Cal. Rptr. 188, 198 (1969). To the contrary, our State has specifically declined to apply the merger doctrine to a charge of felony murder. *State v. Wanrow*, 91 Wn.2d 301, 308, 588 P.2d 1320 (1978) (while acknowledging that when the underlying felony is assault, second degree felony murder can be proved without showing an intent to kill, the court rejected the merger doctrine). We glean from *Wanrow* that it is the policy of this State to allow harsher punishment in certain situations, even without proof of an independent intent to commit the underlying crime. This policy is applicable to an aggravated murder situation such as the one here. Thus, the charge of aggravated first degree murder stands, regardless of whether the State has shown that Mr. Howland had a separate intent to commit a burglary.

In addition, a general look at the aggravating circumstances enumerated in RCW 10.95.020 indicates that the Legislature did not contemplate that the aggravating circumstances involve an additional or independent criminal intent. Rather, the statute describes "circumstances" when the death penalty may be appropriate. *See, e.g.,* RCW 10.95-.020(1) (victim was a law enforcement officer); RCW 10.95-.020(2) (perpetrator is an escaped prisoner); RCW 10.95-.020(6)(a), (b) (victim was judge, juror, witness, etc., and murder is related to exercise of official duties). None of the above circumstances requires an intent that is independent of the premeditated intent to cause death. Because these circumstances do not involve independent criminal intent, there is no indication that the Legislature contemplated requiring the "burglary" circumstance to involve a separate or independent criminal intent.

Finally, RCW 9A.520.50 provides:

> Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.

It is reasonable to infer from this statute that the Legislature intended to prohibit the merger of burglary with another crime whether it is charged as an aggravating factor or as a separate crime.

Thus, the trial court did not err when it denied Mr. Howland's motion to dismiss burglary as an aggravating factor.

### INEFFECTIVE ASSISTANCE OF COUNSEL

█ Mr. Howland also contends he was prejudiced by ineffective assistance of counsel. It is true, as Mr. Howland contends, that in at least one instance his trial attorneys should have objected to inaccurate jury instructions.[2] Nevertheless, this, by itself, does not meet the defendant's heavy burden of showing that his attorneys "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . " and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), *adopted in State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987).

Under *Strickland* there is a strong presumption the performance was reasonable. The defendant bears the burden of showing that, but for the ineffective assistance of counsel, there is a reasonable probability the outcome would have

---

[2] Jury instruction 12 was inaccurate when it stated that a person is guilty of first degree felony murder when he or she attempts to commit a burglary *in the second degree* and in the course of the burglary causes the death of a person. A correct statement of the law would have told the jury that first degree felony murder requires proof of burglary in the first degree. *See* RCW 9A.32.030(c). Instruction 14, the corresponding "to convict" instruction, similarly tells the jury to convict if it finds that the murder occurred in the course of a burglary in the second degree. Burglary in the second degree is an aggravating circumstance permitting a conviction for aggravated first degree murder, RCW 10.95.020(9)(c), but it does not support a conviction for first degree felony murder.

been different. *State v. Bowerman*, 115 Wn.2d 794, 802 P.2d 116 (1990). The appellate test for counsel incompetence is whether, after an examination of the entire record, this court can conclude the defendant received effective representation and a fair trial. *State v. Ciskie*, 110 Wn.2d 263, 284, 751 P.2d 1165 (1988).

Mr. Howland does have a legitimate argument that his counsel's failure to notice an inaccurate jury instruction (especially one setting out the elements of the charge) constitutes ineffective assistance. *See State v. Ermert*, 94 Wn.2d 839, 850, 621 P.2d 121 (1980). Mr. Howland has not, however, shown that the inaccurate jury instruction on felony murder prejudiced him. The jury convicted him on both the greater charge of first degree murder with aggravating circumstances and the felony murder charge. The court specifically noted that the felony murder charge merged with the greater charge for sentencing purposes. Thus, there was no prejudice. While Mr. Howland points to other claimed errors made by his trial attorneys, a reading of the entire record confirms that the representation was effective and he was not deprived of a fair trial. Thus, we find no reversible error based on the claim of ineffective assistance of counsel.

## INCONSISTENT JURY VERDICT

Mr. Howland also asserts the trial court erred by denying a motion for a mistrial when the jury returned guilty verdicts on both the aggravated murder charge and on the felony murder charge. We find no error. The denial of a motion for a mistrial in a criminal case is reviewed under an abuse of discretion standard. In determining whether the irregularity so prejudiced the jury as to deny the defendant a fair trial, we consider the seriousness of the irregularity, and whether it could be remedied short of a new trial. *State v. Essex*, 57 Wn. App. 411, 788 P.2d 589 (1990).

Here, after the defense moved for a mistrial, the court asked the parties to brief the issue, heard argument and ultimately denied the motion. The judge noted that "when

you look at the proof presented in the trial of this case, it shows that there was one death, one burglary, and that there was sufficient evidence to present any rational trier of fact with a question of whether or not there was premeditation." In addition, "the jury filled out all of the verdict forms, the jury found beyond a reasonable doubt that the crime of aggravated murder in the first degree was committed." Based on those observations, the trial judge concluded that for sentencing purposes the felony murder conviction merged with the aggravated first degree murder conviction. *Cf. State v. Irizarry*, 111 Wn.2d 591, 763 P.2d 432 (1988) (jury improperly instructed that felony murder is a lesser included offense of first degree murder with aggravating circumstances; jury did not convict of first degree murder but did convict on felony murder; new trial required). Here, there was no abuse of discretion; the court adequately considered the potential for prejudice and concluded the irregularity could be remedied at sentencing without requiring a new trial. There was no error.

## EVIDENTIARY RULINGS

Finally, Mr. Howland makes numerous evidentiary challenges, which are reviewed under an abuse of discretion standard. *State v. Mak*, 105 Wn.2d 692, 718 P.2d 407, *cert. denied*, 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986). We have reviewed all of these claimed errors and find no abuse of discretion. We address only the most meritorious of his contentions.

First, Mr. Howland contends the admission of the audio tapes of his conversations with Tom Tamberelli was error. Like all relevant evidence, authenticated audio tapes are admissible at the discretion of the trial court, but should be excluded if they are unduly prejudicial. *State v. Frazier*, 99 Wn.2d 180, 661 P.2d 126 (1983). Mr. Howland argues that the admission of the tapes was unduly prejudicial because they are unintelligible in places and, because of pretrial editing, they contain gaps and pauses; thus, the

jury placed undue emphasis on the tapes and the accompanying transcripts. Mr. Howland has not shown prejudice. It is clear from the record that the jury was adequately instructed as to the appropriate evidentiary weight to be given the tapes and access to the tapes was carefully controlled. The possible prejudice from the tapes does not outweigh their relevance.

He also contends it was an abuse of discretion to admit into evidence certain photographs of the crime scene and the autopsy. Again, we find no error. Photographs, even gruesome photos, are admissible if their probative value outweighs their prejudicial effect. *State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983). Here, the trial court expressed its concerns about the potential for prejudice, as well as the potential cumulative nature of the photos. As a result, only some of the photos of the body, the crime scene and the autopsy were admitted. The trial court, on the record, balanced the probative and prejudicial values of the photos and there was no error.

The only other evidentiary issue we need address is whether it was error to exclude the testimony of several potential defense witnesses. Mr. Howland attempted to call two residents of the apartment complex where the victim had lived. The two men were to testify they had been assaulted in the apartment building. Mr. Howland was apparently attempting to put forth the theory that Forrester's death could have been a random act of violence. Following an offer of proof, the court excluded the testimony, ruling "there has to be some relevant and material connection between the other occurrences at the Ferndale Apartments and the situation that's now presently before us." The trial court did not abuse its discretion in so ruling. *See State v. Mak*, 105 Wn.2d 692, 716, 718 P.2d 409 (before a defendant can introduce evidence connecting another person with the crime charged, there must be a train of facts or circumstances tending to point to someone besides the accused as the guilty party), *cert. denied*, 479 U.S. 995 (1986).

598

Mr. Howland also attempted to call a third resident of the apartments to testify that April Short had once assaulted Forrester. This witness did not see the assault, but was told of it by Mr. Forrester. This testimony was properly excluded as hearsay.

Mr. Howland has not shown us the trial court erred in any manner that may have prejudiced the outcome of his trial. The conviction of first degree murder with the aggravating factor of burglary in the second degree and the sentence of life imprisonment without the possibility of parole or release are affirmed.

MORGAN, A.C.J., and ALEXANDER, J., concur.

Review denied at 121 Wn.2d 1006 (1993).