[No. 16577-9-III. Division Three. April 20, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. SAUL MONTEMAYOR LOPEZ, *Appellant*.

*Dorn & O'Brien, P.S.,* by *Brian C. O'Brien,* for appellant. *David Sandhaus, Prosecuting Attorney,* and *Irene K. Asai, Deputy,* for respondent.

KURTZ, A.C.J. — Saul M. Lopez was convicted of two counts of first degree child molestation and three counts of first degree rape against three of his five children. At his trial, a state social worker, who was identified as a forensic interviewer for sexually abused children, was allowed to testify concerning statements made to her by the children. These hearsay statements were admitted by the court under both the medical diagnosis treatment exception to ER 803 and RCW 9A.44.120. We conclude the ER 803(a)(4) exception did not apply because the interviews were conducted only for forensic purposes and not for diagnosis or treatment. But we conclude that the statements were admissible under RCW 9A.44.120.

Mr. Lopez also contends the court erred by: (1) allowing the prosecutor to impeach a defense witness during closing arguments based on a pretrial conversation, (2) allowing Mr. Lopez's statement about the veracity of his children into evidence, and (3) not granting a new trial based upon cumulative errors. We reject these contentions and affirm Mr. Lopez's convictions.

## FACTS

Saul M. Lopez and Almalesia Lopez were married in 1982 and divorced in May 1996. There were five children born during the marriage, identified in 1996 as S.L., a 13-year-old boy; N.L., a 10-year-old girl; E.L., a 9-year-old boy; M.L., a 6-year-old boy; and Er.L., a 4-year-old boy.

On October 18, 1995, Mrs. Lopez arrived home from work after 4:00 P.M. Feeling tired, she went to her room to lay down. E.L. and M.L. were both on the bed, jumping up and down. Mrs. Lopez told the two to stop and laid down. M.L. said to his mother that if she would give him some candy, he would tell her what his father had done. She asked M.L. what his father had done. In his words, M.L. revealed that his father had molested him. E.L., who heard what his brother said, then revealed "he [his father] put his private in my butt."

Mrs. Lopez went to her daughter, N.L., and asked if she knew anything about what the two boys were saying. She did not respond but, according to her mother, she appeared ashamed.

Mrs. Lopez gathered her children and went to pick up her oldest son, S.L., from his ball practice. She asked S.L. if he knew anything about what the other children were saying about their father. When asked, the oldest boy became angry, but he did confirm the statements made by his brothers about his father, and included himself as a victim of the abuse.

Mrs. Lopez drove to the police station. She spoke with Detective Brian Taylor and Detective David Boothman. She told the two officers what her children had told her. The officers talked to the children separately in Mrs. Lopez's presence. At no time did she tell the children what to say to the officers nor did she ask the children any questions.

Several days after the interview, the officers asked Mrs. Lopez to take the children to Deaconess Medical Center to meet with Karen Winston, a state social worker and forensic interviewer of sexually abused children. Ms. Winston interviewed the children in order to determine what happened to them. After the interview, Mr. Lopez was arrested and charged with three counts of first degree child molestation and three counts of first degree child rape.

At Mr. Lopez's trial, E.L. testified his father had told him to get on the bed and to take his pants down. His father then put his private part into E.L.'s bottom.[1] His father's private part felt hard. Nothing came out of his father's private. His father's hands were around E.L.'s stomach. This occurred when E.L. was seven and eight years old.

S.L. stated that his father had touched his penis. His father had also touched his bottom with his father's private part. This had occurred lots of times. When his father touched S.L.'s bottom, this was on the inside of his bottom.

---

[1]For the sake of accuracy, this opinion uses the same phrases employed by the attorneys in their questioning of the children.

His father's private part felt hard and S.L. experienced pain. These touchings occurred in S.L.'s room and in his father's room and also in the shower. He would be unclothed during these occurrences and his father would be dressed in his underwear. The touchings would start when the boy and his father would be playing and wrestling. His father would then touch both the front and back privates of S.L. He would ask his father to stop and his father would not. S.L. was struck in the face and the neck by his father. His father would say he was sorry after the occurrences. His father would say he would not do it again, but the touchings continued to occur. He was told not to tell his mother by his father.

On one occasion, S.L. was given $10 by his father. This occurred on a trip to Ellensburg. During the trip, his father touched S.L.'s private parts on the inside of his clothing. His father touched S.L.'s penis with his open hand. His father asked him to touch his private part, both on the inside and the outside of his clothing. His father's private part would be hard when his father asked him. On one occasion when his father put his penis in S.L.'s bottom, he experienced rectal bleeding. S.L. could not recall if he had spoken to his teachers about the molestation by his father. He indicated that he had spoken with his uncle but he could not remember when this occurred or what he told his uncle.

The Lopez's daughter, N.L., testified that her father touched her on both the front and back of her body in the areas which were described in the trial as "private." When her father first touched her front private area, she recalled that she was in the third grade and that her clothes were off. She could not remember when her father touched her back private area. Her clothes were on at the time, but she could not remember if the touching was inside or outside her clothing. She recalled having seen her father's penis, described as his private, but she could not remember when this occurred or what he was doing when this occurred.

Ms. Winston testified about statements the children made to her when she interviewed them.

Mr. Lopez was convicted of two counts of first degree child molestation and three counts of first degree child rape. His motion for arrest of judgment was denied and he was sentenced to 280 months. He appeals.

## ANALYSIS

Did the court err by allowing Karen Winston to testify regarding statements made to her by the children under the medical diagnosis treatment exception to ER 803(a)(4)?

Ms. Winston was identified as a forensic interviewer for sexually abused children. She was allowed to testify at the trial about the statements made by the children when she interviewed them. Her testimony regarding Count III, the alleged rape of N.L., and Count V, the alleged molestation of E.L., was critical because the two children's testimony regarding the conduct upon which these counts were based, was less complete than the hearsay statements elicited by Ms. Winston. This was particularly true of the testimony of N.L., who did not testify that her father raped her as alleged in Count III.

■ The court admitted Ms. Winston's testimony under the medical exception to the hearsay rule. Mr. Lopez contends it was error to admit this testimony because the interviews were not conducted for the purposes of medical diagnosis or treatment as required by ER 803(a)(4), but were conducted for trial preparation. We review rulings on the admissibility of evidence under the abuse of discretion standard. *State v. Howland*, 66 Wn. App. 586, 596, 832 P.2d 1339 (1992), *review denied*, 121 Wn.2d 1006 (1993); *Bowers v. Fibreboard Corp.*, 66 Wn. App. 454, 459, 832 P.2d 523, *review denied*, 120 Wn.2d 1017 (1992).

■ ER 803(a)(4) provides an exception for

[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

There is a generally accepted two-part test to aid in deciding whether statements proposed for admission under ER 803(a)(4) are reliable: (1) was the declarant's apparent motive consistent with receiving medical care; and (2) was it reasonable for the physician to rely on the information in diagnosis or treatment. 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE § 803(4) [01] (1991); *In re Dependency of M.P.*, 76 Wn. App. 87, 93, 882 P.2d 1180 (1994), *review denied*, 126 Wn.2d 1012 (1995).

■ The State concedes that the interviews with Ms. Winston were not for purposes of medical diagnosis or treatment. At trial, the prosecutor informed the trial court "it was a forensic interview, Your Honor. We were looking for information. What happened to you? When did it happen to you, and who did it?" The question is whether an interview conducted by a social worker for purely forensic purposes is admissible under ER 803(a)(4).

We can understand why the State believes that such statements may be admissible. In the context of the special problems presented to courts by child victims, some courts have taken an aggressive approach to the rule and have admitted hearsay statements that are only marginally related to medical treatment or diagnosis.[2] However, even in those cases, there was some relationship between the statements and the child's diagnosis or treatment.

---

[2]Statements made to counselors in child abuse or rape situations have been admitted. *State v. Sims*, 77 Wn. App. 236, 239, 890 P.2d 521 (1995); *State v. Florczak*, 76 Wn. App. 55, 65, 882 P.2d 199 (1994), *review denied*, 126 Wn.2d 1010 (1995); *State v. Bishop*, 63 Wn. App. 15, 24-25, 816 P.2d 738 (1991), *review denied*, 118 Wn.2d 1015 (1992). Likewise, statements attributing fault to a member of the victim's immediate family have been held to be reasonably pertinent to treatment and admissible because it is "relevant to the prevention of recurrence of injury." *State v. Butler*, 53 Wn. App. 214, 221, 766 P.2d 505, *review denied*, 112 Wn.2d 1014 (1989). Similarly, hearsay statements regarding identity have been admitted because child abuse can involve psychological as well as physical injury and there is a risk of further injury if the child and the abuser live in the same household. *State v. Ashcraft*, 71 Wn. App. 444, 456-57, 859 P.2d 60 (1993). The exception has been applied to both treating physicians and physicians who are consulted for the purpose of enabling the physician to testify. *In re Dependency of Penelope B.*, 104 Wn.2d 643, 656, 709 P.2d 1185 (1985). Thus, a statement made to enable a forensic, nontreating doctor to make a diagnosis, even for court purposes, has been found to be within this hearsay exception.

· Here, the State concedes Ms. Winston was hired solely to interview the children to determine the existence and extent of sexual abuse for trial purposes. There is nothing in the record that indicates the children understood that their statements would further diagnosis or treatment. And, there is nothing in the record that indicates the children's interviews were pertinent to diagnosis or treatment by any physician or counselor. Consequently, the statements made to Ms. Winston lacked the indicia of reliability required for admission under ER 803(a)(4).

Mr. Lopez's convictions of two counts of first degree child molestation and three counts of first degree rape are affirmed.

Did the court err in holding N.L.'s and E.L's statements were admissible under RCW 9A.44.120?

N.L. was two weeks short of the age of 10 when she had her interview with Ms. Winston. For reasons that are not apparent on the record, the State elected not to request a *Ryan*[3] hearing as to N.L.'s hearsay statements. Instead, the State represented to the trial court that they would be seeking to admit N.L.'s statements to Ms. Winston under ER 803(a)(4).

■ The first issue raised by Mr. Lopez is whether the trial court conducted a sufficient hearing before Ms. Winston testified regarding N.L.'s statements. After she testified, and the State requested that her statements to Ms. Winston be admitted pursuant to RCW 9A.44.120, the court conducted a hearing outside the presence of the jury. Counsel for Mr. Lopez and the State each argued the admissibility of N.L.'s statements to Ms. Winston based upon the testimony and the factors identified in the relevant case law. The court considered the testimony and arguments of counsel and, after making the requisite findings, decided that the statements could be admitted under RCW 9A.44.120.

RCW 9A.44.120 requires the State to notify the defend-

---

[3]*State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

ant of its intent to offer a child hearsay statement, but the statute does not prescribe the notice period. The notice requirement is derived from the "catch-all" hearsay exception under Federal Rule of Evidence 803(24).[4] *State v. Hughes*, 56 Wn. App. 172, 174, 783 P.2d 99 (1989). This federal rule has been interpreted as requiring sufficient notice to provide the adverse party with a fair opportunity to prepare to challenge the admissibility of the statement. *United States v. Bailey*, 581 F.2d 341, 348 (3d Cir. 1978).

Under the unique circumstances of this case, we believe Mr. Lopez was afforded a sufficient opportunity to meet and contest the admission of N.L.'s statements to Ms. Winston. First, because the court had previously ruled that they were admissible under ER 803(a)(4), Mr. Lopez was prepared for the State's use of these statements. Second, there had been a *Ryan* hearing regarding statements made by E.L. to Ms. Winston. Consequently, Mr. Lopez was familiar with Ms. Winston, her interviewing techniques, and the circumstances under which the statements were taken. The trial court is in the best position to make the determination of reliability and made its decision regarding the *Ryan* hearing immediately after she testified. *State v. Swan*, 114 Wn.2d 613, 667-68, 790 P.2d 610 (1990). We conclude the trial court conducted a sufficient *Ryan* hearing before Ms. Winston testified regarding N.L.'s statements.

■■ RCW 9A.44.120 reads in pertinent part:

A statement made by a child when under the age of 10 describing any act of sexual contact performed with or on the child by another . . . not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings . . . in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

---

[4]Now codified as Federal Rule of Evidence 807.

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

In *Ryan*, the Supreme Court noted that it had adopted a set of factors applicable to determining the reliability of out-of-court declarations. Those factors are:

(1) [W]hether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness.

*Ryan*, 103 Wn.2d at 175-76 (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)). Not every factor need be satisfied; it is enough that the factors are "substantially met." *Swan*, 114 Wn.2d at 652.

The *Ryan* court also noted that the *Parris* factors were not exclusive and that additional factors as outlined in *Dutton v. Evans*, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970), should be considered. Those factors are as follows:

(1) [T]he statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan*, 103 Wn.2d at 176. Washington courts have considered factors (1) and (2) to be of minimal relevance to this analysis. *See State v. Borland*, 57 Wn. App. 7, 786 P.2d 810, *review denied*, 114 Wn.2d 1026 (1990); *State v. Stange*, 53 Wn. App. 638, 769 P.2d 873, *review denied*, 113 Wn.2d 1007 (1989). The determination of whether statements are admissible under the child abuse hearsay exception is within the sound discretion of the trial court. *In re*

*Dependency of S.S.*, 61 Wn. App. 488, 494-95, 814 P.2d 204, *review denied*, 117 Wn.2d 1011 (1991).

*Motive to Lie.* Mr. Lopez does not contend that N.L. and E.L. had a motive to lie to Ms. Winston and there is no evidence that they did have a motive to lie.

*Character.* The basis of this factor is whether the children had a reputation for telling the truth. *Id.* at 497. Here, there is no evidence in the record that the children had a reputation for not telling the truth. In fact, Mr. Lopez commented to the sheriff during a police interrogation that his children would not lie.

*Statements Heard by More Than One Person.* In *Dependency of S.S.*, 61 Wn. App. at 497, the court found this factor to be satisfied where the child repeated similar statements to different people on different occasions. The children made similar statements to their mother, to the police and to Ms. Winston. Mr. Lopez alleges the statements lacked consistency. It is true that N.L. revealed only the rape to Ms. Winston and E.L. told different versions of touching his father's privates, but the children did reveal to different people similar statements about sexual activity with their father.

*Spontaneity of the Statements.* Mr. Lopez contends N.L.'s statements to Ms. Winston lacked spontaneity. "[F]or purposes of determining the reliability of a statement made by a child victim of sexual abuse, any statements made that are not the result of leading or suggestive questions are spontaneous." *Id.* N.L.'s statement that "[h]e put his private part up my butt," was volunteered without a question and was totally spontaneous.

*Timing of Statements and Relationship Between Child Declarant and Witness.* N.L. and E.L.'s statements were made to Ms. Winston, a professional trained in properly interviewing sexually abused children. The presence of professionals investigating child abuse enhances the reliability of the statements. *State v. Young*, 62 Wn. App. 895, 901, 802 P.2d 829, 817 P.2d 412 (1991).

*Possibility of Faulty Recollection.* N.L. and E.L. were nine and eight at the time Ms. Winston interviewed them. Although they seem to have trouble with some of the details, they were old enough to remember what their father had done to them. It is unlikely their recollection was faulty.

*Circumstances Surrounding the Statements.* The statements were made in an environment that was designed to put the children at ease and allow them to talk openly. Ms. Winston's interviews were conducted in such a manner that would support a finding of reliability. The *Ryan* factors were substantially satisfied here and Ms. Winston's testimony about N.L.'s and E.L.'s statements was properly admitted under RCW 9A.44.120.

We decide the court did not err in holding N.L.'s and E.L.'s statements were admissible under RCW 9A.44.120.

Next, Mr. Lopez contends the court erred by allowing the prosecutor to attempt to impeach one of his witnesses. Mr. Lopez's defense involved the impeachment of S.L. by establishing that he had falsely informed the sheriff's deputies that he had reported the abuse to three witnesses prior to any investigation. When one of these witnesses testified that S.L. had never reported any abuse to her, the prosecutor, on cross-examination implied that she had told her something different in an earlier conversation. Mr. Lopez contends the prosecutor improperly placed before the jury her personal "understanding" of the prosecutor's conversation with the witness. The prosecutor then, during closing argument, argued that her version of the conversation was more credible than the witness's. According to Mr. Lopez, the effect of this improper questioning and closing argument was to deny Mr. Lopez his due process right to a fair trial and his right to confront witnesses against him.

Mr. Lopez argues the prosecutor had no intention of introducing extrinsic evidence of the prosecutor's conversation with the witness. He notes that while a prosecutor may impeach a witness on the basis of prior inconsistent statements, the prosecutor may not use impeachment as a

guise for submitting to the jury substantive evidence that is otherwise unavailable. Mr. Lopez maintains this error was not harmless. Rather, he submits impeachment of the credibility of S.L.'s statements was critical to his defense.

At the trial, a deputy testified that S.L. told him he had previously told two of his teachers, his mom and his uncle about the sexual abuse. As his defense, Mr. Lopez called the teachers and the uncle to testify that S.L. had not told them about the abuse. On cross-examination of one of the teachers, the prosecutor repeatedly referred to a phone conversation with the teacher in which the teacher talked about a conversation with S.L. which caused her concern. The teacher denied that she had said anything about such a conversation with S.L., but the prosecutor continued to ask about the conversation. In her closing argument, the prosecutor implied that the teacher had forgotten about the conversation. No evidence of the conversation was introduced.

" '[A] prosecutor may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable.' " *State v. Babich*, 68 Wn. App. 438, 444, 842 P.2d 1053 (quoting *United States v. Silverstein*, 737 F.2d 864, 868 (10th Cir. 1984)), *review denied*, 121 Wn.2d 1015 (1993). Thus, a prosecutor's impeachment of witnesses by referring to extrinsic evidence never introduced may rise to a violation of the right to confrontation. *Babich*, 68 Wn. App. at 445-46. Deciding if the questions are inappropriate requires examining whether the focus of the questioning is to impart evidence within the prosecutor's personal knowledge without the prosecutor formally testifying as a witness. *See* 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 258 at 125 (3d ed. Supp. 1998-1999); *cf. Babich*, 68 Wn. App. at 444-45; *State v. Denton*, 58 Wn. App. 251, 257, 792 P.2d 537 (1990).

The State concedes that the questions were inappropriate, but contends the error was harmless citing S.L.'s lengthy testimony about the abuse by his father. Error is

harmless unless the improper cross-examination was sufficient to affect the outcome of the trial. *State v. Smith,* 67 Wn. App. 838, 846, 841 P.2d 76 (1992).

In addition to S.L.'s detailed testimony about his father's sexual abuse, S.L. testified that he couldn't remember if he told his teachers about the abuse or not. It was not that helpful to Mr. Lopez's case that the teachers testified S.L. had not told them anything about the abuse. S.L. was not sure that he had told them anything even though the deputy had it in his notes that S.L. had told them. While we do not condone the prosecutor's improper impeachment of the teacher, we conclude it had no effect on the outcome of the trial and was harmless.

Mr. Lopez also contends the trial court erred when it allowed his statement regarding the veracity of the children into evidence. Prior to trial, Mr. Lopez objected to the admission of his earlier expressed opinion regarding the veracity of his children. This comment that his children would not lie, was expressed to the sheriff during interrogation. Mr. Lopez believes the trial court erred by ruling that the statement was admissible. He argues the effect of this error was to prejudicially invade the province of the jury and thereby deny him his right to a fair trial.

At the trial, the sheriff's deputy testified that he advised Mr. Lopez of his constitutional rights and then questioned him about the accusations of sexual abuse made by his children. The deputy testified that in response to a question on whether his children would lie about this, Mr. Lopez said, "I don't believe they would lie about it, I must have done it but I don't remember doing it."

Mr. Lopez contends it was error to admit this testimony because it compelled Mr. Lopez to express an opinion as to whether a witness was lying and that invades the province of the jury. However, Mr. Lopez was not asked about the veracity of his children at the trial and his comment was not part of his testimony. The statement was made as part of a confession he made to the deputy. Under

*Miranda*,[5] a confession is voluntary, and therefore admissible, if made after the defendant has been advised concerning rights and the defendant then knowingly, voluntarily and intelligently waives those rights. The statement was admissible.

Finally, Mr. Lopez contends the court erred by not granting a new trial. He argues his trial was replete with error and the combined effect of the accumulation of errors requires a new trial.

 It is well accepted that reversal may be required due to the cumulative effects of trial court errors, even if each error examined on its own would otherwise be considered harmless. *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984); *State v. Badda*, 63 Wn.2d 176, 183, 385 P.2d 859 (1963); *State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992). Analysis of this issue depends on the nature of the error. Constitutional error is harmless when the conviction is supported by overwhelming evidence. *State v. Whelchel*, 115 Wn.2d 708, 728, 801 P.2d 948 (1990); *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). Under this test, constitutional error requires reversal unless the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in absence of the error. *Whelchel*, 115 Wn.2d at 728; *Guloy*, 104 Wn.2d at 425. Nonconstitutional error requires reversal only if, within reasonable probabilities, it materially affected the outcome of the trial. *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993); *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981).

Mr. Lopez did not receive a perfect trial. It was error to admit Ms. Winston's testimony about N.L.'s and E.L.'s statements to her under the medical diagnosis exception. However, the statements were properly admitted under RCW 9A.44.120, so the error was harmless. It was error to allow the prosecutor to impeach Mr. Lopez's witness by implying the witness had told her something different in a

---

[5]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

previous conversation. But, again, this error was harmless. We conclude the jury would have reached the same result in the absence of these errors.

Mr. Lopez's convictions of two counts of first degree child molestation and three counts of first degree rape are affirmed.

BROWN and KATO, JJ., concur.

Reconsideration denied June 24, 1999.