IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72111-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TYRA ELEANOR SCHY, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 21, 2015 |

SCHINDLER, J. — Tyra Eleanor Schy appeals her convictions for first degree burglary while armed with a deadly weapon in violation of RCW 9A.52.020 and RCW 9.94A.825 and second degree assault while armed with a deadly weapon in violation of RCW 9A.36.021 and RCW 9.94A.825. Schy argues her attorney provided ineffective assistance of counsel by failing to move for a mistrial. Because Schy cannot establish ineffective assistance of counsel, we affirm.

In December 2012, Nicholas Eckert and Michael Oakley lived in a house in Everett. The night of December 28, Eckert drove Oakley to meet some friends at a McDonald's in Arlington. After Eckert dropped off Oakley, he returned home to Everett. Oakley and his friend Austin Clouatre arrived at Eckert's house in the early morning hours of December 29.

Several minutes later, Oakley heard a tap on the window of his room. Oakley looked out the window and saw a friend on the front porch. As Oakley opened the front door, he saw five people on the porch, including Tyra Eleanor Schy, Jerome Poulon, and Iran Ramirez. Seconds later, Schy punched Oakley in the left side of his face and then went into the house carrying a knife. Poulon, who was carrying a metal pipe, followed Schy inside. Eckert heard the "scuffle" on the porch and began yelling at Schy and Poulon to leave. Schy advanced toward Eckert, threatening him with a knife. Eckert backed into a bathroom and pushed the door shut.

Meanwhile, Oakley ran out the front door of the house and began pounding on the door of a neighboring house for help. After Schy left Eckert's house, Oakley started running down the street. Schy chased Oakley with the knife in her hand. A neighbor called 911.

While Schy was chasing Oakley outside, Poulon went into Oakley's bedroom, grabbed a laptop, and left the house. Clouatre followed Poulon but Poulon told him to return to the house. Clouatre waited in Eckert's house for several minutes and then went home.

The State charged Schy, Poulon, and Ramirez with first degree burglary while armed with a deadly weapon. Poulon and Ramirez pleaded guilty to the charge and agreed to testify at trial. By amended information, the State charged Schy with first degree burglary while armed with a deadly weapon and second degree assault while armed with a deadly weapon.

The three-day jury trial began on May 19, 2014. Before voir dire, the defendant moved to exclude testimony that Schy was "always known to carry a knife around with

2

her prior to this alleged incident." In specific, Ramirez had previously stated that Schy "always carried a knife." The prosecutor argued that if Schy were known to carry a knife in her purse, it would be relevant and more probative than prejudicial. The court reserved ruling on the motion. The court ruled the prosecutor would need to make an offer of proof.

The State called Eckert, Oakley, and Clouatre to testify. Eckert, Oakley, and Clouatre each testified that a woman entered the house holding a knife. Eckert testified the knife was 16 to 18 inches long. Oakley testified the knife was about 7 inches long. Clouatre testified the knife was 5 to 6 inches long.

The State called Poulon. Poulon testified that neither Schy nor Ramirez had consumed alcohol or ingested drugs that night. Poulon testified that he did not remember Schy or Ramirez entering Eckert's house. On cross-examination, Poulon stated he never saw Schy with a knife during the incident. On redirect, Poulon said he could not see Schy's hands while they were at the front door but he saw Schy's right hand pointing at Oakley.

The State called Ramirez to testify. Ramirez testified through a certified Spanish interpreter. Ramirez testified that in December 2012, he was in a relationship with Schy. Shortly after Ramirez began testifying, the defense attorney requested a sidebar about the order in limine. The court reminded the State that it must make an offer of proof before Ramirez could testify that Schy always carries a knife. The prosecutor said the State "was not intending to ask this witness about any knife-carrying other than this particular day."

3

Following the sidebar, Ramirez testified that while at Poulon's house on December 28, he used methamphetamines, and Schy consumed alcohol and used methamphetamines and marijuana. Ramirez testified he agreed to drive the group to Eckert's house that night. Ramirez remembered seeing Poulon with a large "Rambo type" knife and that Poulon put the knife in the backseat of the car where Schy was sitting. Ramirez then testified he saw Schy that night with a "folding knife that opens up." The prosecutor then asked, "Okay. When did you see her with a knife on that night?" The interpreter translated, "She always —" before the court interrupted and excused the jury.

The court explained to the attorneys that "I speak Spanish" and confirmed with the interpreter that Ramirez had stated that "she always carries a knife" in violation of the order in limine. The prosecutor stated the answer was "obviously" not in response to the question. The defense attorney expressed concern that a juror could have understood what Ramirez said, "I think that we should somehow find that out. . . . [I]f somebody did [understand his statement], I mean, automatically, I'd move for a mistrial." On the other hand, the defense attorney stated, "[I]f nobody heard what was being said in Spanish and they didn't interpret it, I guess I'd move to strike it at this point." With the agreement of the parties, the court decided to continue Ramirez's testimony and after a break, ask the jurors if any of them speak Spanish.

Before resuming the testimony of Ramirez, the court instructed the jury "to disregard that last question and partial answer." Ramirez testified that Schy had a folding knife with her that evening and that the blade of the knife was slightly shorter than the length of a pen.

After the lunch recess, the defense attorney asked the court to determine whether any juror understood Spanish. The defense attorney stated that "if there is something where somebody has heard something, there is a potential violation, I'm going to have to move for a mistrial. I don't want to, of course, but like I said, that's a duty to my client." Before resuming Ramirez's examination, the court asked the jurors, "[D]oes anybody here speak Spanish?" After no juror responded, the court stated, "All right. That seems to address the problem." During a recess, the defense attorney stated that "the Court did a great job of curing that," that he did not "see anything that would prejudice the jury or impact the jury with anything that was said," and that he was "fine with moving on."

Schy testified. Schy denied that she had a knife and denied that she assaulted Eckert. Schy stated that during the altercation on the front porch, Oakley "pushed" her to the ground and Eckert yelled at her. Schy testified she had her purse and her phone in her left hand but had "nothing" in her right hand. Schy denied entering the house that evening.

The jury found Schy guilty as charged of first degree burglary and second degree assault. By special verdict, the jury found Schy was armed with a deadly weapon during the commission of the crimes. Schy appeals.

Schy claims her attorney provided ineffective assistance of counsel by failing to move for a mistrial after a violation of the court's order in limine.

To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the performance prejudiced the defendant's case. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). To show deficient performance, Schy must satisfy the "heavy burden" of showing that her attorney " 'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " State v. Howland, 66 Wn. App. 586, 594, 832 P.2d 1339 (1992); Thomas, 109 Wn.2d at 225 (quoting Strickland, 466 U.S. at 687). The attorney's performance must have fallen below "an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To satisfy the prejudice prong, a defendant must show a "reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." McFarland, 127 Wn.2d at 334-35.

Schy cannot establish deficient performance of counsel or prejudice. Schy claims her attorney's performance was deficient because the attorney did not move for a mistrial on the grounds that Ramirez's testimony violated the court's order in limine.

" 'The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.' " State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

"In determining the effect of an irregular occurrence during trial, we examine '(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it.' " Johnson, 124 Wn. 2d at 76 (quoting Hopson, 113 Wn.2d at 284).

The trial irregularity—a partially translated statement that violated the court's order in limine—was not serious and the court cured the irregularity by sustaining the motion to strike. The court instructed the jury that "[i]f evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict." The jury is presumed to follow instructions to disregard improper evidence. State v. Russell, 125 Wn.2d 24, 84, 882 P.2d 747 (1994). Accordingly, if Schy's attorney had moved for a mistrial, the court would not have abused its discretion in refusing to grant the motion. See State v. Wade, 186 Wn. App. 749, 773-75, 346 P.3d 838 (2015) (trial court did not abuse its discretion in denying a motion for mistrial where the violation was not serious and any resulting prejudice was cured). Schy cannot show that she received ineffective assistance of counsel.

We affirm Schy's convictions for first degree burglary while armed with a deadly weapon and second degree assault while armed with a deadly weapon.

WE CONCUR: