[No. 21021–1–I.   Division One.   March 20, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. JASON STANGE, *Appellant.*

*Julie A. Kesler* and *Jesse Barton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Tim Blood, Deputy,* for respondent.

FORREST, J.—Jason Stange, a juvenile, was convicted of three counts of statutory rape in the first degree. He appeals, challenging the testimonial competency of a victim, the admission of that victim's out–of–court declarations to her mother, and the sufficiency of the evidence. We affirm.

On February 14, 1987, Jason Stange was engaged by Jan Bennett to baby–sit four children for the evening. The children were A, age 4, B, age 18 months, C, age 5, and D, age 3.[1] Stange was 14 years old at the time. Upon returning

---

[1] Pseudonyms are employed in this opinion to protect the identities of the child victims.

home in the early hours of February 15, Bennett noticed that C was wide–awake and acting silly when Stange left.

The next morning, A told her mother, Bennett, that "Jason licked me." Bennett asked A where she had been licked, and A pointed to her genital area. "A" further demonstrated what Stange had done, including having licked her genitalia and anus. At the same time, C began parading around the room, "with both hands holding her front crotch area." "A" told her mother that she had seen Stange lick C's genitalia and D's anus, and suck on B's penis.

Bennett notified the mother of C and D of A's statements. They examined the genitalia of the three girls, and noticed that all were swollen and red in that area. The children were taken to Harborview, where they were examined by the attending physician, Dr. Silver. Dr. Silver found evidence of trauma to A's hymen that was likely sustained at least several days before and of acute inflammation that was likely sustained within the last several days at the outside. Dr. Silver made similar findings as to C and D, finding evidence of both prior trauma and of acute inflammation. Dr. Silver concluded that the girls' symptoms were consistent with having been sexually abused.

After returning from Harborview, A told her mother that she wished to "talk about Jason." "A" reiterated her statements about Stange having licked her genitalia and anus, and added that Stange had placed her hand on his penis. She also said that Stange told her not to tell her mother about what they had done.

Stange was arrested and charged with four counts of statutory rape in the first degree, one for each child. He denied having any contact with the children. A fact–finding hearing was held, in which Stange objected to A's competence to testify. The court found that A was competent to testify, and A testified to her observations of what Stange had done to her and the other children. "A" frequently responded "I forgot" to questions, but eventually answered the questions after encouragement.

Jan Bennett was called as the next witness. Stange objected to her testimony regarding A's original outburst that "Jason licked me" and the associated statements. The court ruled that the statements were admissible under the child hearsay exception. Stange also objected to her testimony regarding the statements made by A after they returned from Harborview. The court ruled that the second set of statements were spontaneous declarations and were admissible. A third set of statements by A were not admitted because they were the result of questioning by her mother. Dr. Silver, the attending physician, and Dr. Jenny, who performed a follow–up examination of the children, both testified as to the evidence of sexual abuse they found.

The court found Stange guilty on the counts involving A, C, and D. He was found not guilty on the count involving B. The court found that Stange had made oral contact with the vaginas of A and C, and reserved findings regarding D. At the presentation of written findings and conclusions, the court made a finding that Stange had penetrated D's vagina, using his tongue or some other object. The written findings were entered, and Stange was convicted and sentenced.

## TESTIMONIAL COMPETENCE

Stange first argues that the court erred in finding that A was competent to testify. He contends that the court's findings do not satisfy the competency standard of CrR 6.12(c)(2);

[C]hildren who do not have the capacity of receiving just impressions of the facts about which they are examined or who do not have the capacity of relating them truly.

Stange identifies a number of internal inconsistencies in A's testimony and a number of contradictions between A's testimony and that of her mother. He argues that these inconsistencies and contradictions made it impossible to determine what A remembered or to determine whether she was relating the facts truly.

The elements of establishing the competence of a child witness are:

(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*State v. Allen,* 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

█ The trial court made findings as to each of these elements in determining that A was competent to testify, and such a determination will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Allen, supra; State v. Bailey,* 52 Wn. App. 42, 47, 757 P.2d 541 (1988). No such abuse of discretion has been shown. A's testimony established that she understood her obligation to speak the truth and that she had sufficient capacity and memory to testify as to Stange's actions. "A" testified that she knew the difference between the truth and a lie, testified accurately as to her age, birth date, friends' names, and identifications of persons in the courtroom, and identified Stange when he was specifically pointed out.

█ Stange argues that A's failure to identify him in two earlier attempts demonstrates her incompetence. However, these earlier questions were ambiguous, as in "Do you see anyone else in the courtroom you know?" A's failure to identify Stange after such questions does not demonstrate her testimonial incompetence. The inconsistencies and contradictions go to the weight of A's testimony, not its admissibility. The court did not err in finding that A was competent to testify.

### ADMISSIBILITY OF OUT–OF–COURT DECLARATIONS

Stange argues next that the court erred in admitting A's out–of–court declarations to her mother under RCW

9A.44.120,[2] because it failed to correctly apply the factors enumerated in *State v. Ryan,* 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984):

Recently this court adopted a set of factors applicable to determining the reliability of out-of-court declarations. *State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982). Those factors are: "(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness." *Parris,* at 146. We added that these factors were not exclusive and should be considered with the additional factors in *Dutton v. Evans,* 400 U.S. 74, 88-89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970): (1) *the statement contains no express assertion about past fact,* (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

(Italics ours.)

■ Admissibility under RCW 9A.44.120 lies in the sound discretion of the trial judge and will not be reversed absent a manifest abuse of that discretion. *State v. Frey,* 43 Wn. App. 605, 611, 718 P.2d 846 (1986); *State v. Jackson,* 42 Wn. App. 393, 396, 711 P.2d 1086 (1985). With the

---

[2]RCW 9A.44.120 provides in relevant part:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings in the courts of the state of Washington if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

exception noted below, our review of the record satisfies us that the trial court properly evaluated and applied the *Ryan* factors and did not abuse its discretion.

The trial judge did not specifically evaluate the factor of whether A's statements contained an "express assertion about past fact", although there had been prior discussion with counsel indicating that neither counsel nor the judge were clear as to the meaning or use of this factor.

The reference to "no express assertion about past fact" in *Ryan* is puzzling. Clearly, if that factor is applicable, it must militate against admission of the declarations. However, the purpose of RCW 9A.44.120 is precisely to allow the hearsay statements of a child victim to be admitted. The statute has been held to meet constitutional standards for the confrontation of witnesses. *State v. Ryan*, 103 Wn.2d at 170. The significant portion of child hearsay testimony will always be an assertion about past fact, usually about the very act constituting the crime charged. In *Ryan*, the court mentions that the statements referred to past facts but did not discuss the relationship of this factor to the purpose and operation of RCW 9A.44.120. *Ryan*, at 176–77. However, consideration of the factor was not necessary to the court's decision because there were other adequate grounds indicating a lack of reliability, such that exclusion of the statements was justified.

*Ryan* employed the factors for determining the reliability of out–of–court declarations developed in *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982). In *Parris*, a statement by an informant in a drug case was admitted as a statement against penal interest, excepted from the hearsay rule under ER 804(b)(3). The *Parris* court quoted the following from *Dutton v. Evans*, 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970):

> The confrontation issue arises because the jury was being invited to infer that Williams had implicitly identified Evans as the perpetrator of the murder when he blamed Evans for his predicament. But we conclude that there was no denial of the right of confrontation

as to this question of identity. First, the statement *contained no express assertion about past fact,* and consequently it carried on its face a warning to the jury against giving the statement undue weight. Second, Williams' personal knowledge of the identity and role of the other participants in the triple murder is abundantly established by Truett's testimony and by Williams' prior conviction. It is inconceivable that cross–examination could have shown that Williams was not in a position to know whether or not Evans was involved in the murder. Third, the possibility that Williams' statement was founded on faulty recollection is remote in the extreme. Fourth, the circumstances under which Williams made the statement were such as to give reason to suppose that Williams did not misrepresent Evans' involvement in the crime. These circumstances go beyond a showing that Williams had no apparent reason to lie to Shaw. His statement was spontaneous, and it was against his penal interest to make it. These are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant.

. . .

The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth–determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *California* v. *Green,* [399 U.S. 149, 161, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970).]

(Italics ours.) *Parris,* at 145–46.

There is no explicit discussion of the italicized factor in *Parris,* and the court went on to consider what indicia of reliability were essential to allow the admission of a statement against penal interest which tended to implicate the defendant. Obviously, the court was not considering any use of the factors under a statutory child hearsay exception.

In *Dutton,* the issue was whether the admission of the hearsay statement of a nontestifying coconspirator implicating the defendant was a denial of the defendant's Sixth Amendment right to confront the witnesses against him.

The factor regarding express assertions about past fact appears in *Dutton* without any particular emphasis. The Court suggested that a statement lacking express assertions about past fact would in some way signal the jury to not give undue weight to such a statement. Although not self-evident, no reason is suggested as to why a jury would so react. There is neither authority cited nor policy reasons presented for making the presence or absence of such assertions a routine evaluative factor in hearsay cases. Obviously, many clearly admissible hearsay statements satisfying the confrontation clause do contain such assertions. It does not appear to us that *Dutton* makes the absence or presence of assertions about past fact a constitutional factor that must be considered in determining the admissibility of hearsay statements.

In any event, whatever role the circumstance that a hearsay statement contains an "express assertion about past fact" may play in evaluating admissibility of a coconspirator's statement (*Dutton*) or a statement against penal interest (*Parris*), it does not seem helpful as a factor to be evaluated by the trial court when determining admissibility under RCW 9A.44.120. Moreover, in *State v. Leavitt,* 111 Wn.2d 66, 75, 758 P.2d 982 (1988), the court applying the *Ryan* standards specifically commented on the assertion as to past fact as follows:

As to the *Dutton* factors, the child's statements were an assertion of past fact, and conceivably the defense could have revealed an inadequate knowledge basis through more extensive cross examination. However, child hearsay statements about sexual abuse will usually contain statements about past fact, and where defense does not inquire into details on cross examination it could usually be said that cross examination could have revealed an inadequate knowledge basis. These factors do not weigh in favor of reliability, but under *these facts* we conclude that they do not weigh in favor of unreliability, either.

(Italics ours.)

*Leavitt* recognizes that assertions as to past fact will always be present, that when the child witness is unavailable cross examination will always be denied, and cross examination could in every case possibly show error in the child hearsay statement. The real question then becomes whether the other indicia of reliability are sufficiently strong to justify admission. Indeed, it appears that the risk of error in the child hearsay statement is precisely why the other reliability factors have been established as prerequisites to admission. In other words, an assertion as to past fact should be seen as part of the risk of admitting child hearsay statements, rather than as an evaluative factor in assessing the risk for purposes of meeting Sixth Amendment standards. In *Leavitt* we take "these factors" to refer to the other indicia of reliability. It appears unlikely that in the child hearsay context the court is going to be confronted with a case in which it can say, "because the child–hearsay statement does not contain an assertion of past fact, fewer indicia of reliability are required for admission." For practical purposes, it appears that the trial court can ignore questions as to whether the statement does or does not contain assertion as to past fact, so long as it evaluates the other factors indicating reliability in the context of the facts of the particular case before it. In light of *Leavitt,* it appears that the assertion as to past fact becomes a "wash" item. Accordingly, the trial judge committed no error in failing to specifically weigh it.

### SUFFICIENCY OF THE EVIDENCE

Stange contends that the court "completely disregarded" all exculpatory testimony and medical evidence, while simultaneously accepting inculpatory evidence, even though they were inconsistent. He asserts that the court reversed the burden of proof and required him to prove his innocence beyond a reasonable doubt. He argues that because the court rejected A's testimony regarding Stange's contact with B and acquitted on that count, it should have rejected all of A's testimony and acquitted on all counts. He also

contends that the court made a finding regarding penetration of D in the absence of any evidence.

■ Stange's arguments are essentially a challenge to the sufficiency of the evidence. Sufficient evidence exists as to each of the three convictions if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Italics omitted.) *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). The evidence is sufficient to prove each element of the charges beyond a reasonable doubt. The acquittal of the charge involving B has no effect on the others, because medical evidence corroborated the testimony regarding the girls, but was not available to corroborate the testimony about B. The medical evidence did provide evidence that D had recently been penetrated vaginally. Stange's assertions are without merit.

## SUPPLEMENTAL PRO SE BRIEF

A "pro se supplemental brief" written by Stange's father was filed.[3] This brief points out testimonial contradictions and inconsistencies at some length, reiterates the issues argued by counsel, and presents two additional issues.

This brief does not comply with the Rules of Appellate Procedure and should not have been filed. RAP 10.1(d) provides that "*A defendant* in a review of a criminal case may file a brief supplementing the brief filed by the defendant's counsel, . . ." (Italics ours). Briefs prepared by persons other than the defendant and the defendant's counsel should not be filed unless permission is granted by this court. RAP 10.1(e), (h), 10.6. Although we are not obligated to do so, we address the issues presented in the "pro se" brief.

---

[3]The "pro se supplemental brief" was signed "Jason D. Stange, Sr." After this opinion was filed, an affidavit was submitted by appellant in which he stated that he wrote the brief and that at the time he filed the brief, he was signing his name as "Jason Stange, Sr." As the arguments presented in the brief have been considered and rejected, we need not address this matter further.

The first issue is that the testimony of the victims' mothers should have been excluded because they made unsubstantiated allegations that Stange had violated the conditions of his pretrial release. Stange makes no citation to the record regarding such allegations, and no such allegations were found in a review of the record. The second issue is that the medical evidence proved Stange's innocence because it showed that the girls had been abused "at least several days before" the incident with which he was charged. The medical evidence substantiated both prior sexual abuse and recent abuse. The supplemental issues are without merit.

Affirmed.

SWANSON and WEBSTER, JJ., concur.

After modification, further reconsideration denied June 20, 1989.

Review denied at 113 Wn.2d 1007 (1989).