# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,                )
                                    )       No. 71466-0-I
              Respondent,           )
                                    )       DIVISION ONE
       v.                           )
                                    )       UNPUBLISHED OPINION
K.L.G.,                             )
                                    )
              Appellant.            )       FILED: May 26, 2015
_____)

APPELWICK, J. — Twelve year old K.L.G. was convicted of child molestation in the first degree of five year old C.S. K.L.G. asserts that the juvenile court applied an incorrect legal standard and abused its discretion when it concluded C.S. was competent to testify. He argues that the juvenile court erred in admitting C.S.'s child hearsay statements. He alleges that the court erred when it allowed the child interview specialist to remain in the courtroom during the proceedings. For the first time on appeal, he contends that C.S.'s oath was not adequately administered. We affirm.

## FACTS

Throughout his childhood, 12 year old K.L.G. has been repeatedly removed from households because of his behavioral problems. Eventually, K.L.G. was placed with his biological father, Newton Gibson. Gibson lived with his girlfriend, Jennifer Pursley, and her three children, including her youngest child, C.S. On September 28, 2013, after six weeks in the home, K.L.G. ran away.

The day K.L.G. ran away from home, C.S. told Pursley that "the other day" K.L.G. had pulled down C.S.'s pants, put soap in C.S.'s bottom, and put his penis inside C.S.'s bottom. But, when Pursley tried to get more details from C.S. about the incident at that

time, C.S. was emotional and did not say anything else about it. Later that day, Pursley called the police to report that K.L.G. had run away from home.

The police found K.L.G. and asked Pursley to come pick him up. When Pursley arrived to pick up K.L.G., she spoke with Officer Molly Ingram. Pursley told Officer Ingram that there had been some issues with K.L.G.'s disruptive behavior in the home and she told Officer Ingram about what C.S. had told her.

Later that night, Pursley took C.S. to the hospital to be examined by Sexual Assault Nurse Practitioner Sherry Allen. C.S. told Nurse Allen that K.L.G. does "gross stuff" when they are alone together and that K.L.G. hurts him. Nurse Allen then performed a physical exam. Nurse Allen did not observe anything in the rectal area and noted no trauma.

The next day, police officers interviewed K.L.G. K.L.G. denied the allegations and remarked that he thought it was possible that C.S. was offered money to falsely accuse K.L.G. in order to get K.L.G. into trouble. During the interview, K.L.G. also informed the officers that he was physically abused and that there was drug abuse in the home.

On October 2, 2013, C.S. was interviewed by Child Interview Specialist Gina Coslett. C.S. has developmental delay issues, and he was very distracted during the interview. Nonetheless, during the interview, C.S. told Coslett that K.L.G. had humped him and touched C.S.'s butt with his hands. C.S. said that humping means "doing gross stuff."

That same day, the State charged K.L.G. with rape of a child in the first degree. It subsequently added one count of child molestation in the first degree.

The juvenile court conducted a combined competency and child hearsay determination during the course of trial. C.S. testified that K.L.G.'s "wiener" touched his

2

bottom and that it went inside his butt. At times, C.S. seemed reluctant to testify and said that he did not know the answer to several questions. C.S. asked about lunch three times during the course of his testimony and mentioned the service dog in the courtroom. C.S. also asked to go to recess. Coslett and Pursley also testified. Coslett testified about her prior interview with C.S. and Pursley testified about C.S.'s disclosure of the incident and the events that took place that day.

The juvenile court concluded that C.S. was competent. And, it concluded that the statements C.S. made to Pursley and Coslett were admissible as child hearsay. The juvenile court entered written findings and conclusions about C.S.'s competence and about the reliability and admissibility of C.S.'s statements to Pursley and Coslett.

The juvenile court found K.L.G. guilty of child molestation. K.L.G. appeals.

## DISCUSSION

K.L.G. argues that the juvenile court erred when it concluded that C.S. was competent to testify. He further maintains that the court erred when it admitted C.S.'s child hearsay statements. He further contends that the court abused its discretion when it denied his motion to exclude Coslett from the courtroom. And, he contends that his motion to exclude Coslett from the courtroom below enables him to challenge the propriety of C.S.'s oath for the first time on appeal, because Coslett interjected herself into the oath administration.

I. Competency

K.L.G. first contends that the juvenile court performed an incorrect, incomplete legal analysis when it determined that C.S. was competent to testify.

This court reviews competency determinations for abuse of discretion. State v. Stange, 53 Wn. App. 638, 642, 769 P.2d 873 (1989). If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis, it necessarily abuses its discretion. Dix v. ICT Grp., Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

The test of the competency of a young child as a witness consists of the following: (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it. State v. Allen, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). Satisfaction of each of the Allen factors is essential to a determination that a child may properly testify. Jenkins v. Snohomish County Pub. Util. Dist. No.1, 105 Wn.2d 99, 102-03, 713 P.2d 79 (1986).

K.L.G. first contends that the juvenile court did not satisfactorily employ the first Allen factor, because it evaluated only if C.S. "understood his obligation to speak the truth." According to K.L.G., the court failed to determine whether C.S. understood his obligation to speak truthfully on the witness stand, in a legal proceeding. Allen, 70 Wn.2d at 692. K.L.G. appears to be drawing this conclusion, because the findings of fact do not specifically mention that C.S. understood he needed to speak truthfully on the witness stand. But, just because the court did not enter a finding of fact mimicking the language of the first Allen factor does not necessarily mean that the court did not engage in that analysis. In fact, C.S. was on the witness stand when he promised to tell the truth. And,

4

the record indicates that the court considered this fact in making its determination. The juvenile court engaged in the correct inquiry under the first Allen factor.

K.L.G. then argues that the juvenile court did not accurately apply the second and third Allen factors, because it considered only whether C.S. had "an accurate recollection at the time of the occurrence and the ability to retain the recollection." K.L.G. contends that the court did not make the required determination that C.S. had the ability to receive an accurate and independent impression of the incident that allegedly occurred. But, the record indicates the court did consider the proper standard in making its determination. Specifically, the juvenile court opined that C.S. clearly had the mental capacity to receive an accurate impression of the occurrence, noting that it was only three months before trial. It continued that C.S. had a sufficient memory to retain an independent recollection of the occurrence.

K.L.G. contends that even if the juvenile court applied the correct competency analysis standard, the juvenile court abused its discretion by ultimately concluding that C.S. was competent to testify under Allen. In reviewing a juvenile court adjudication, this court must decide whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings support the conclusions of law. State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007). Unchallenged findings of fact are verities on appeal. Id.

The determination of the witness's competence and ability to meet the requirements of the Allen test rests primarily with the trial judge who sees the witness, notices his manner, and considers his capacity and intelligence. Allen, 70 Wn.2d at 692. These are matters that are not reflected in the written record for appellate review. Id.

Their determination lies within the sound discretion of the trial judge and will not be disturbed on appeal in the absence of proof of manifest abuse of discretion. Id. There is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness. State v. Woods, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005). On appeal, this court may examine the entire record in reviewing a competency determination. Id.

A. Obligation to Tell the Truth (*Allen* Factor (1))

K.L.G. alleges that the juvenile court abused its discretion, because there was not substantial evidence to support the court's finding that C.S. understood his obligation to tell the truth in a legal proceeding.

Prior to testifying at the competency hearing, the judge began to administer C.S.'s oath:

> THE COURT: Okay.
>
> Good morning. We are going to ask you to raise your right hand. Can you do that for me? The other right hand. That's right. Put it back up.
>
> Do you swear that the testimony you will give in this proceeding today will be the truth, the whole truth, and nothing but the truth?
>
> MS. GINA COSLETT: Do you promise to tell the truth?
>
> THE WITNESS: Yes.

Consequently, K.L.G. first contends that C.S. failed to understand his obligation to tell the truth in a legal proceeding, because C.S. was improperly sworn in. He contends that the oath did not solicit a promise to the judge to tell the truth in the courtroom setting. He claims that C.S.'s silence after the judge asked him if he swore to tell the truth plainly illustrates that C.S. did not understand the importance of telling the truth. But, K.L.G.

agreed to tell the truth after Coslett clarified the question and distilled it into language a five year old could better understand. Moreover, a formal oath is not a prerequisite to a satisfaction of this Allen factor. See State v. Johnson, 28 Wn. App. 459, 461, 624 P.2d 213 (1981) (finding the witness competent even though the court did not require the child to subscribe to a formal oath), aff'd, 96 Wn.2d 926, 639 P.2d 1332 (1982).

There is substantial evidence in the record indicating that C.S. understood the importance of telling the truth in a legal proceeding. First, C.S. promised to tell the truth during the oath in court. Additionally, he acknowledged that his parents told him it is important to tell the truth. His mother testified that she taught C.S. the importance of telling the truth and that lying is a bad thing. And, C.S. promised to tell the truth during his prior interview with Coslett.

Nonetheless, K.L.G. cites to portions of the record and raises a number of additional concerns about C.S.'s testimony: that C.S. testified that he sometimes tells the truth and he sometimes does not tell the truth; that C.S. testified inconsistently about whether he told his mother about the event in question; that he could not remember if Coslett told him during their interview that it was important to tell the truth; and that he "tricked" Coslett and later testified that he "didn't trick anything"—implying that C.S. was lying about prior events. However, to the extent K.L.G. highlights inconsistencies in C.S.'s testimony, inconsistencies in a child's testimony go to weight and credibility, not competency. State v. Carlson, 61 Wn. App. 865, 874, 812 P.2d 536 (1991). Moreover, appellate courts do not weigh evidence. Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

Substantial evidence supports the finding that C.S. satisfied this Allen factor.

B. Independent Recollection and Ability to Retain and Describe the Events (*Allen* Factors (3), (4), & (5))

K.L.G. further claims that the juvenile court abused its discretion when it determined that C.S. had an independent recollection of the claimed event when he made only occasional, vague, and fragmentary statements that were elicited by adult professionals. He further challenges the juvenile court's finding of fact that C.S. had the ability to describe the events and understand simple questions about the events.

He first asserts that C.S. did not answer simple questions with clear descriptions that showed he had perceived or independently remembered the alleged event. Rather, he contends, C.S. had to be prompted by adults questioning him via leading questions and that C.S. failed to respond adequately to those questions. K.L.G. cites to several examples from C.S.'s interview with Coslett. Coslett asked C.S. why C.S. came to speak with her. C.S. responded that he did not know both times. Coslett asked why C.S.'s mother was worried something happened to him, and C.S. responded that he did not know. But, Coslett then told C.S. that she heard he went to see the doctor. At that point, C.S. responded:

> C.S.: Oh yeah then um (unintelligible) was humping me and doing that stuff.
>
> CIS Coslett: [S]omething what[?]
>
> C.S.: Kyle was humping me and doing that stuff[.]
>
> CIS Coslett: Kyle was humping you and doing that stuff[?]
>
> C.S. [Y]eah[.]

Neither Coslett nor C.S. mentioned K.L.G. or the specific incident until C.S. mentioned it in response to why he went to the doctor. Then, during C.S.'s testimony in court, he independently reiterated that K.L.G. did "gross stuff" to him. He then described the "gross stuff" to be touching his butt with K.L.G.'s "wiener." And, he said that K.L.G. was touching his butt. When asked whether K.L.G.'s wiener was on the outside of his butt, C.S. independently responded that "it was in my butt." Even though C.S. was distracted during both his interview with Coslett and while testifying, he still responded to questions that showed he independently remembered the alleged event. There was substantial evidence in the record that C.S. had the ability to independently describe the events and understand simple questions about them.

K.L.G. also refers to instances which he claims show that C.S. did not have an accurate recollection of the events. During his interview with Coslett, C.S. could not remember what room he was in when there was "humping," but during his testimony in court, C.S. said that the humping took place in his bedroom. And, C.S. could not remember that he had previously defined "humping" as K.L.G. touching him with his hands. But, again, inconsistencies in a child's testimony do not go to the question of competency. Carlson, 61 Wn. App. at 874. And, the existence of inconsistencies or contradictions in a witness's testimony do not render the witness incompetent. Stange, 53 Wn. App. at 642.

Substantial evidence supported the finding that C.S. satisfied Allen factors (3), (4), and (5).

C. Mental Capacity at the Time of Occurrence (*Allen* Factor (2))

Whether the juvenile court abused its discretion in finding that C.S. satisfied Allen factor (2) is dependent upon C.S.'s mental capacity at the time of the occurrence. In re Dependency of A.E.P., 135 Wn.2d 208, 225-26, 956 P.2d 297 (1998). K.L.G. alleges the court erred when it found C.S. competent to testify, because C.S. did not have the ability to perceive the events at the time. He challenges the court's finding of fact that C.S. had an accurate recollection at the time of the occurrence and the ability to retain the recollection.

The trial court should determine whether the child has the capacity at the time of the event to receive an accurate impression of the event. Id. If the trial court has no idea when the alleged event occurred, it cannot begin to determine whether the child had the mental ability at the time of the alleged event to receive an accurate impression of it. Id. at 225.

In A.E.P., an allegedly abused child testified that she was inappropriately touched a very long time ago. Id. at 224. The child could not specify how long ago the event took place. Id. The trial court considered whether the child could connect the event to another point of reference in the child's life such as who her babysitter was at the time or where her mother was living. Id. The child listed off four different babysitters who all babysat at different points in time. Id. The A.E.P. court determined that because the trial court could not determine when in the past the alleged events occurred, it could not possibly begin to determine whether the child had the mental ability at the time of the incident. Id. at 225. Consequently, the court held that the second Allen factor was not satisfied. Id. at 225-26.

C.S.'s mother, Pursley, testified that C.S. does not know the difference between a month, a couple of days, or a week. K.L.G. contends that, as a result, this Allen factor cannot be satisfied. Coslett corroborated Pursley's statement and testified that C.S. does not have an accurate sense of time. But, she also testified that this is not unusual for a five year old and that time sequencing is difficult for children.

C.S. testified that he did not report the incident to his parents right after it happened. He further testified that he told his mother about the incident on the same day that K.L.G. ran away from home. When C.S. told Pursley about the incident, he said that it happened "'the other day.'" Pursley further testified that about three weeks before C.S. reported the alleged event, she noticed that C.S. became more clingy and emotional. She identified one moment three weeks before the allegation surfaced in which she saw C.S. with K.L.G. and C.S.'s face was red and teary. She further testified that C.S. was acting scared and seemed too scared to report what was making him upset.

Here, although C.S.'s testimony was not specific as to the date the event occurred, other evidence in the record allowed the juvenile court to determine an adequate approximation of when the alleged event occurred. The court found that the event took place sometime between September 1, 2013 and September 30, 2013.[1] This is unlike A.E.P. in which the court reasoned that it could not determine when the past alleged events occurred.

Moreover, given that finding, there was substantial evidence in the record to determine that C.S. had the mental capacity at the time of the occurrence to receive an accurate impression. C.S. was clear about the date he reported it to his mother. C.S.

---

[1] K.L.G. did not explicitly challenge this finding of fact.

testified that K.L.G.'s wiener went inside his butt, that he did not like it and said that it felt bad, and that K.L.G. humped C.S. by touching his butt with his hands. And, the juvenile court noted that when C.S. testified that he did not like K.L.G. touching him, C.S. was assertive and looked at K.L.G. during that point in the testimony.

Substantial evidence supported the finding that C.S. satisfied Allen factor (2).

We conclude that the juvenile court did not abuse its discretion when it determined that C.S. satisfied the Allen factors and was competent to testify.

## II.   Child Hearsay

The juvenile court ruled that C.S.'s statements to his mother, interview specialist Coslett, and Nurse Sherry Allen[2] were admissible as child hearsay. K.L.G. contends that under State v. Ryan, 103 Wn.2d 165, 691 P.2d 197 (1984), the juvenile court erred when it allowed Pursley and Coslett to testify as to C.S.'s statements.

"Hearsay" is a statement made by a declarant not testifying at trial that is offered into evidence to prove the truth of the matter asserted. ER 801(c). Hearsay is not admissible except as provided for by the rules of evidence, by other court rules, or by statute. ER 802. The child hearsay statute provides that a statement made by a child under the age of 10 describing an act of sexual conduct with the child or on the child is admissible if the court finds that the time, content, and circumstances of the statement provide sufficient indicia of reliability and the child either testifies at the proceedings or is unavailable as a witness. RCW 9A.44.120. In determining whether the statements are

---

[2] K.L.G. challenges only C.S.'s statements to Pursley and Coslett on appeal. Defense counsel stipulated to the admission of Nurse Allen's statements at trial based on the medical diagnosis hearsay exception. Therefore, the juvenile court did not analyze those statements under the Ryan factors.

reliable, this court applies nine factors known as the Ryan factors. State v. Swan, 114 Wn.2d 613, 647-648, 790 P.2d 610 (1990). A trial court need not determine that every Ryan factor is satisfied before admitting child hearsay, but the trial court must show that the factors are substantially met. Id. at 652. The Ryan factors are:

> "(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; . . . (5) the timing of the declaration and the relationship between the declarant and the witness"[; (6)] the statement contains no express assertion about past fact; [(7)] cross-examination could not show the declarant's lack of knowledge; [(8)] the possibility of the declarant's faulty recollection is remote; and [(9)] the circumstances surrounding the statement are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

Id. at 647-48 (citation omitted) (quoting Ryan, 103 Wn2d at 176).

The trial court is in the best position to make the determination of reliability as it is the only court to see the child and the other witnesses. State v. Pham, 75 Wn. App. 626, 631, 879 P.2d 321 (1994). Whether statements are admissible pursuant to the child hearsay exception is within the sound discretion of the trial court and will not be reversed absent a showing of manifest abuse of discretion. Id. Reliability does not depend on whether the child is competent to take the witness stand, but on whether the comments and circumstances surrounding the statement indicate it to be reliable. Swan, 114 Wn.2d at 648. If the declarant was not competent at the time of making the statements, the statements may not be introduced through hearsay repetition. Ryan, 103 Wn.2d at 173.

K.L.G. contends that an analysis of the Ryan factors show that the statements are not reliable.

A. Apparent Motive to Lie

The juvenile court found that there was no evidence that C.S. had an apparent motive to lie. K.L.G. contends that C.S. did have an apparent motive to lie and that there is not substantial evidence in the record to support the juvenile court's finding. K.L.G. references Pursley's testimony that C.S. and K.L.G. had a sibling rivalry and did not get along with each other, just like normal brothers. But, there is no evidence in the record that C.S. wanted K.L.G. out of the home. Nor is there evidence that five year old C.S. knew that by fabricating a very specific sexual assault allegation K.L.G would be removed from the home. No evidence suggests that, sibling rivalry or not, C.S. wanted to harm K.L.G.

K.L.G. further claims that the record indicates that C.S. had a motive to lie, because C.S.'s family wanted K.L.G. out of the house. When K.L.G. spoke with the police officers he said that he thought C.S. was offered money to fabricate the allegations. But, there is no additional evidence in the record that supports this possibility. And, this theory presupposes that C.S. had the wherewithal to repeatedly lie on purpose. This is belied by K.L.G.'s arguments attacking C.S.'s competence and mental abilities. The record supports the finding that this factor is satisfied.

B. The Child's General Character

The basis of this factor is whether C.S. had a reputation for telling the truth. State v. Lopez, 95 Wn. App. 842, 853, 980 P.2d 224 (1999). The juvenile court found that there was no evidence that C.S. had a reputation for dishonesty and that he has the same reputation for truthfulness of a normal five year old boy. K.L.G. contends that C.S.'s character for honesty was "bad" and that the juvenile court neither expressly analyzed his

character for honesty nor had the substantial evidence necessary to enter its finding. K.L.G. claims that C.S.'s character and reputation for honesty was bad, because he tricked Coslett about what he had for breakfast during their interview and then lied about it in court. And, because he was silent when the court administered the oath.

But, these two instances do not establish a reputation for dishonesty. Moreover, Pursley testified that C.S. knew the importance of telling the truth and generally tells the truth. This is reputation evidence, however limited, of the five year old's honesty. The record supports a finding that this factor is satisfied.

C. Whether More than One Person Heard the Statements

The juvenile court found that C.S. told his mother, Coslett, and Nurse Allen about the incident. This factor is satisfied where the child repeats similar statements to different people on different occasions. Lopez, 95 Wn. App. at 853. K.L.G. contends that the inconsistency of C.S.'s statements to these individuals cuts against satisfaction of this factor.

Despite minor inconsistencies in C.S.'s definition of "humping" or "doing gross stuff," C.S. told all three women similar versions of K.L.G. touching him sexually or "doing gross stuff." It is true that aside from his testimony in court, C.S. only explicitly revealed the sexual penetration to his mother. But, C.S. did reveal to different people similar statements about sexual activity with K.L.G. See Lopez, 95 Wn. App. at 853 (finding this Ryan factor satisfied even after children told different and inconsistent versions of their stories because they revealed similar statements to different people about sexual activity with their father). This factor is satisfied.

15

D. The Spontaneity of the Statements

The juvenile court found that all of C.S.'s statements were spontaneous. For purposes of determining the reliability of a statement made by a child victim of sexual abuse, any statements made that are not the result of leading or suggestive questions are spontaneous. Id.

K.L.G. argues that the statements were not spontaneous, but were a result of coaxing and urging. He contends that the juvenile court lacked substantial evidence to find that all the statements were spontaneous under the law. First, he contends that C.S.'s statement to his mother was not spontaneous, because Pursley questioned C.S. for several hours after he made a statement in the car about K.L.G. But, this questioning was after C.S. told Pursley that K.L.G. had pulled C.S.'s pants down, put soap in his bottom, and stuck his penis in. C.S. made that statement after he spontaneously told Pursley that he had something to tell her and after Pursley gave him a little tickle and asked him what was going on.

K.L.G. further contends that all of C.S.'s statements to Coslett were as a result of drawn-out coaxing and urging. But, Coslett did not mention K.L.G. or the specific incident until C.S. mentioned it in response to why he went to the doctor. Simply because Coslett was speaking with C.S. and asking him vague questions does not mean that she led him into making a specific statement about K.L.G. This factor is satisfied.

E. Timing of Statements and Relationship Between Declarant and Witness

The juvenile court found that C.S. waited to disclose the incident until K.L.G. was out of the home, (as opposed to doing so when K.L.G. was still in the home with the capability of hurting him again), implying that C.S.'s disclosure showed reliability. K.L.G.

contends that the timing of the statements was not reliable, because Pursley told the police about C.S.'s statements only after first telling the officers about K.L.G.'s behavioral problems. In so doing, K.L.G. is evaluating the timing of Pursley's statements and not C.S.'s statements to Pursley that the State sought to admit as hearsay.

Pursley is C.S.'s mother. A relationship of trust between the child declarant and the witness can establish reliability. See Swan, 114 Wn.2d at 650 (concluding reliability, because children's parents were undoubtedly trusted by the children). Moreover, C.S. made additional statements about the incident to Coslett, a professional trained in properly interviewing sexually abused children. The presence of professionals investigating child abuse enhances the reliability of the statements. State v. Young, 62 Wn. App. 895, 901, 802 P.2d 829, 817 P.2d 412 (1991).

K.L.G. further contends that the juvenile court abused its discretion by applying an incorrect legal standard when assessing this prong. He claims this is so, because it inquired about the relationship between the declarant, C.S., and the accused, K.L.G., instead of the relationship between C.S. and the witness, Pursley. While the juvenile court did unnecessarily examine the relationship between K.L.G. and C.S., the Ryan factors are nonexclusive. A.E.P., 135 Wn.2d at 230.

The timing of C.S.'s statements and the relationship between C.S. and Coslett and Pursley suggest reliability. This factor is satisfied.

F. Remoteness of the Possibility of the Child's Recollection Being Faulty

The juvenile court found no indication that C.S.'s recollection was faulty or that he misrepresented K.L.G.'s involvement. The juvenile court opined that C.S. was on the witness stand and told the court about specific facts that had happened. It continued that

17

although there were questions in terms of what time the event may have occurred, there was no reason to suppose that C.S.'s recollection was faulty. K.L.G. argues that this factor is not satisfied, because the record indicates that C.S. is a person of poor trustworthiness generally. He again refers to C.S.'s "admitted dishonesty" and the trick C.S. played on Coslett during the interview.

C.S. recalled the incidents with specific facts and was able to be cross-examined.[3] A child need not remember every detail of the event. See Lopez, 95 Wn. App. at 854. This factor was satisfied.

G. Circumstances Surrounding the Statements and Accused's Involvement

The juvenile court found that there was no indication that C.S. misrepresented K.L.G.'s involvement in the event, because C.S.'s statements were spontaneous and in response to nonleading questions. K.L.G. contends that the circumstances do not show the hearsay testimony to be reliable. But, he does not provide any additional support for this argument. No evidence in the record indicates that C.S. misrepresented the facts. This factor is satisfied.

We conclude that the juvenile court did not abuse its discretion in determining that the Ryan factors were satisfied and in admitting Pursley's and Coslett's statements.[4]

---

[3] K.L.G. contends that the juvenile court lacked the substantial evidence necessary to enter this finding of fact. But, C.S. was subject to cross-examination. And, while he may have had difficulty recalling what he had previously discussed with Coslett and defense counsel in earlier interviews, while on the stand, C.S. was able to recall K.L.G. touching him.

[4] Because we conclude that the juvenile court did not abuse its discretion when it concluded that C.S. was both competent to testify and competent at the time he made the statements to Coslett and Pursley, we need not address K.L.G.'s confrontation clause argument.

III.  Coslett's Presence in the Courtroom

K.L.G. also argues that the juvenile court erred when it denied his motion to exclude Coslett from the courtroom.  Below, K.L.G. moved to exclude Coslett from court while other witnesses were testifying.  The State claimed that because it was difficult to keep C.S. focused, Coslett's expertise and presence would be beneficial.  The juvenile court denied K.L.G.'s motion reasoning that it did not know of any basis for it to exclude Coslett.  It opined that generally a testifying detective is allowed to remain in the courtroom and it did not see a reason why Coslett should be treated any differently.

ER 615 states that at the request of a party, the court may order witnesses excluded so they cannot hear the testimony of other witnesses.  But, ER 615 does not authorize exclusion of a person whose presence is shown to be reasonably necessary to the presentation of the party's cause.  When ER 615's exclusionary rule is invoked, it is customary to exempt one witness to confer with the prosecutor during trial.  State v. Weaver, 60 Wn.2d 87, 90, 371 P.2d 1006 (1962).  Questions concerning the exclusion of witnesses and the violation of ER 615 are within the broad discretion of the trial court and will not be disturbed, absent manifest abuse of discretion.  State v. Schapiro, 28 Wn. App. 860, 867-68, 626 P.2d 546 (1981).

On appeal, K.L.G. contends that allowing a State's witness to be present in the courtroom during the entire case risks many dangers, including, but not limited to, the danger that the witness will be able to tailor his or her testimony to the testimony of witnesses appearing beforehand.  He claims that the State's desire to have a trial witness in the courtroom who it believed could assist in keeping the complainant focused is not a proper basis to allow the witness to stay.

19

K.L.G. provides no authority for any of his assertions that a child interview specialist cannot remain in the courtroom during the proceedings. As a result, K.L.G. has not established that the juvenile court abused its discretion by denying K.L.G.'s motion to exclude Coslett.

## IV. Adequacy of C.S.'s Oath

K.L.G. argues that C.S.'s oath was inadequate, because its content was improper and because an interested State's witness procured it. Prior to C.S.'s testimony, the juvenile court judge began to administer the oath to C.S. When C.S. did not respond, Coslett interjected and asked C.S. if he "promise[d] to tell the truth." K.L.G. challenges the adequacy of the oath for the first time on appeal.

The State contends K.L.G.'s failure to object to the oath at trial constitutes a waiver of any error. Failure to object to the adequacy of a child witness's oath at trial results in a waiver of any error. See State v. Dixon, 37 Wn. App. 867, 876, 684 P.2d 725 (1984). But, K.L.G. contends that his general objection to Coslett's presence in the courtroom functioned as a standing objection as to anything Coslett did while in the courtroom— including her involvement in administering C.S.'s oath.

The purpose underlying issue preservation is to encourage the efficient use of judicial resources. State v. Robinson, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). Issue preservation serves this purpose by ensuring that the trial court has the opportunity to correct any errors. Id. at 304-05. Here, K.L.G.'s counsel objected to Coslett's presence in the courtroom, because "it's something [he had] never seen done before." Counsel provided no rationale or argument to alert the court as to why Coslett's presence was an error that needed to be corrected.

On appeal, K.L.G. contends that the oath was improperly administered, because an interested State's witness helped procure it. But, there is no indication in the record that K.L.G. objected to Coslett's presence because of a fear that she would improperly interject herself into the proceedings. Therefore, K.L.G.'s general objection was insufficient to serve as an objection to the content and manner of administration of the oath.

Alternatively, K.L.G. argues that the absence of an adequate oath is manifest constitutional error under RAP 2.5(a)(3) that can be challenged for the first time on appeal. In State v. Avila, 78 Wn. App. 731, 737-38, 899 P.2d 11 (1995), the court rejected the defendant appellant's RAP 2.5(a)(3) argument that it was manifest constitutional error for a child witness to testify without first being administered a formal oath to tell the truth. The Avila court rejected the argument, because Avila failed to engage in the four step approach established by the court in State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992), for determining whether an alleged constitutional error may be raised for the first time on appeal. Avila, 78 Wn. App. at 738. While K.L.G. cites to Lynn, he does not engage in a meaningful analysis of the four factors. Therefore, like the court in Avila, we reject K.L.G.'s RAP 2.5(a)(3) argument.

Even if we found the issue was properly before us, the oath was adequate. ER 603 requires that every witness be sworn before testifying. Avila, 78 Wn. App. at 738. But, where the witness is a child, a trial court does not abuse its discretion in declining to administer a formal oath. Id. at 737-38. It is sufficient that a child promised to tell the truth. Id. at 738. The trial court administered the formal oath, but C.S. hesitated. Coslett

interrupted to clarify to C.S. that he was being asked if he would tell the truth. He answered, "Yes" to the court. Therefore, there was no error here.

The juvenile court did not abuse its discretion when it concluded that C.S. was competent to testify, when it admitted C.S.'s child hearsay statements, and when it denied K.L.G.'s request to exclude Coslett from the courtroom. We affirm.

_Appelwick, J._

WE CONCUR: